THE MERCHANTS EXCHANGE NATIONAL BANK OF THE CITY OF NEW YORK, Appellant, *v.* THE COMMERCIAL WAREHOUSE COMPANY OF NEW YORK, Respondent.

The complaint set forth a series of loans and advances, and of renewals of the notes given therefor, and alleged that at the time of each loan and of each renewal a charge of one per cent upon the amount of the debt was made in addition to lawful interest, and that thereafter a balance was claimed by defendant (the lender) as due to it on all the previous transactions, and that it granted a renewal of the loan upon the borrower giving his note for the amount claimed.

Upon demurrer,—*Held*, that this was a sufficient allegation of a usurious agreement; that the word " charge" in the association in which it

was found in the complaint implied not only a demand made, but an obligation imposed and taken.

Defendant's charter authorized it to take the management, charge or custody of property, and to make loans and advances thereon upon such terms and commissions, and at such rates of interest, not exceeding seven per cent, as might be established by its directors. (Chap. 378, Laws of 1867.) The complaint alleged a charge by it of one per cent over and above lawful interest upon loans and advances ostensibly as commissions, but which were merely colorable devices to evade the prohibitions of the charter and of the usury laws. *Held*, that the complaint, presented an issue of fact for the jury as to whether the one per cent was a *bona fide* commission or a compensation for the use of the money, / that it was not an issue of law which could be joined in by demurrer.

The provisions of the act prohibiting corporations interposing the defence of usury (chap. 172, Laws of 1850) only prevent the avoidance by a corporation of its own contract upon the ground of usury. They do not apply to a case where the corporation succeeds to the rights of a party who might avail himself of the provisions of the usury laws. Where, therefore, property is pledged to secure a usurious loan, a corporation succeeding to the rights of the pledgor is not prohibited from demanding and recovering the property pledged.

As to who can avail himself of the plea of usury, see note.

(Argued June 5, 1872; decided June 11, 1872.)

APPEAL from a judgment of the General Term of the Superior Court of the city of New York, affirming a judgment of the Special Term in favor of the defendant, sustaining its demurrer to the complaint.

The action was brought to recover for the conversion of a quantity of tobacco, the warehouse receipts for which had been pledged with the defendant, by one Cornelius Oakley, as security for loans made to him by the defendant, which the complaint alleged to be usurious. The plaintiffs claimed the tobacco as purchasers from Oakley.

The substance of the allegations of the complaint appears in the opinion.

*S. P. Nash* for the appellant. This case is not affected by the act of 1850 (chap. 172, Laws of 1850); that act only affects contracts of a corporation. (*Curtis* v. *Leavitt*, 15 N. Y., 1; *Butterworth* v. *O'Brien*, 28 Barb., 187; S. C., 23 N. Y.,

275 ; *Rosa* v. *Butterfield*, 33 id., 665 ; *B. B. Bank* v. *Hope*, 35 id., 65.) A purchaser of property subject to a usurious lien may attack the lien where the purchase is not subject to it. (*Mason* v. *Lord*, 40 N. Y., 476.)

*Aug. F. Smith* for the respondent. When a party has had the benefit of a loan from a corporation, he cannot be permitted to avail himself of the defence that the corporation had no authority under its charter to make the loan. (*Silver Lake Bk.* v. *North*, 4 John. Ch., 370; *Potter* v. *Bank of Ithaca*, 5 Hill., 490 ; *State of Indiana* v. *Woram*, 6 id., 37 ; *Palmer* v. *Lawrence*, 3 Sand. S. C. R., 170 ; *Chester Glass Co.* v. *Dewey*, 16 Mass., 102; *McCutcheon* v. *The Steamb. Co.*, 13 Penn., 13; *Steam Nav. Co.* v. *Weed*, 17 Barb., 378; *Mott* v. *U. S. Trust Co.*, 19 id., 568.) The defence of usury is a personal one, and can only be set up by the party originally bound to pay the debt, or his heirs, devisees or personal representatives. (1 Story on Contract, 4 ed., § 607, *a.* ; *Mech. Bk.* v. *Edward*, 1 Barb., 271; *Same Case*, 2 id., 545 ; *Post* v. *Bk. of Utica*, 7 Hill., 404, approved in *Rexford* v. *Widger*, 2 Com., 131; *Sands* v. *Church*, 2 Seld., 347 *De Wolf* v. *Johnson*, 10 Wheat., 392; *Green* v. *Morse*, 4 Barb., 335; *Bullard* v. *Raynor*, 30 N. Y. R., 206; *Billington* v. *Wagoner*, 33 id., 31; *Chamberlain* v. *Dempsey*, 36 id., 149; *Ohio & Miss. R. R. Co.* v. *Kasson*, 37 id., 218.) No one but the borrower, his heirs, devisees or personal representatives, can take the benefit of the relief prescribed by section eight of the usury laws. (*Schermerhorn* v. *Talman*, 7 Ker., 131; *Post* v. *Bank of Utica*, 7 Hill., 391; *Rexford* v. *Widger*, 2 Com., 131; *Bullard* v. *Raynor*, 30 N. Y. R., 206.) A party by changing the form of action cannot entitle himself to relief under a statute which was not intended for him. (Code, § 275 ; *Linden* v. *Hepburn*, 3 Sand. [S. C.], 668; *N. Y. Ice Co.* v. *N. W. Ins. Co.*, 23 N. Y. R., 357 ; *Phillips* v. *Gorham*, 17 id., 270 ; *Goulet* v. *Asseler*, 22 id., 225 ; *Trull* v. *Granger*, 4 Seld., 119 ; *Bullard* v. *Raynor*, 30 N. Y., 206.) The right of action to cancel or avoid notes or other securi-

ties void for usury cannot be assigned. (*Boughton* v. *Smith*, 26 Barb., 635; *Bullard* v. *Raynor*, 30 N. Y. R., 206.) Under the provisions of the act of 1850 (chap. 172, Laws of 1850) plaintiff is prevented from setting up usury. (*Butterworth* v. *O'Brien*, 23 N. Y. R., 275; *Rosa* v. *Butterfield*, 33 id., 665; *Curtis* v. *Leavitt*, 15 id., 9, 228.) In pleading usury it must be done with certainty; the facts must be stated that make the transaction usurious. (*Cole* v. *Savage*, Clark R., 361–363; *Banks* v. *Van Antwerp*, 15 How. Pr., 29, 30; *Gould* v. *Horner*, 12 Barb., 602; *Cloyes* v. *Thayer*, 3 Hill., 564; *Vroom* v. *Ditmas*, 4 Paige, 533; *Griggs* v. *Howe*, 31 Barb., 100–102; S. C., 2 Keyes, 574; *Manning* v. *Tyler*, 21 N. Y., 567; *Dagal* v. *Simmons*, 23 id., 491.)

Folger, J. The plaintiff was a privy in estate to Cornelius Oakley, the first owner of the property. If the contract between him and the defendant was usurious, he could have recovered the property pledged under it; and, as a general rule, the privies in estate to him could do the same. (*Mason* v. *Lord*, 40 N. Y., 476.)

The defendant advances some arguments why the plaintiff cannot, in this action, do that. First, it is claimed that the complaint does not state facts which make a case of a usurious contract. It is to be conceded that, in pleading usury, it is to be done with certainty. If the facts stated are consistent with usury, the pleading is not sufficient. I am, however, of the opinion, that the facts stated in the complaint in this action do well allege a usurious transaction, in its inception and throughout. The complaint avers an application for a loan or advance of money upon the pledge of property, and the making of a loan or advance in response to that application and upon that pledge. It then avers a succession of further like advances, on like pledges, to the sum of over $100,000; that the advances of smaller sums were, from time to time, consolidated into larger ones, and from time to time renewed, notes of Oakley being given for each advance when made, and for each renewal; that these advances and

renewals were made for a term of sixty days, or shorter period; that at the time of each advance and of each renewal a charge of one per cent on the amount of the debt was made, in addition to interest at the rate of seven per cent for the period for which the loan was renewed; that on a certain day thereafter the defendant claimed a balance of $56,733.78, due to it on all such previous transactions, and granted a renewal of the loan of that amount for another period of thirty days, on the condition that Oakley should give his promissory note therefor at that time, and an agreement pledging as security for the payment of the note the property in question, and that Oakley executed the note and agreement. The objection to the sufficiency of this complaint is, that there is no averment of any agreement that the one per cent should be paid, or that it was paid, and that the averment that there was a charge of one per cent does not amount to an averment of anything more than a demand. The word charge, however, as a technical word of legal use, conveys the meaning of obligation. "The distinctive significance of the term rests in the idea of obligation directly bearing upon the individual thing or person to be affected, and binding him or it to the discharge of the duty or satisfaction of the claim imposed. In this view a charge will, in general terms, denote a responsibility peculiar to the person or thing affected and authoritatively imposed." It means an exaction or demand which must be met; and though, in common phrase, as applied to a single instance, it may at times imply a demand made on the one hand, without power to enforce it, which may or may not be complied with on the other, yet in this complaint, in the association in which it is found, applied to a recurrence of transactions, it carries with it the fuller meaning of an obligation imposed and taken. So that, although the striking of a balance and the giving of the note and contract of pledge might not affect the prior transactions and vitiate them, if they were originally untainted, yet there is a substantial averment that the one per cent was demanded

as a condition of each advance and renewal, from first to last, and was at each allowed.

Second. The complaint avers that the exaction of the one per cent was not warranted by the charter of the defendant. It is claimed by the defendant that it is; and that, from the provision of the charter, it appears that there was not usury in agreeing for it.

This claim is rested upon the provision of the seventh section (Laws of 1867, chap. 378, pp. 839–842), which allows the defendant to receive and take the management, charge or custody of real or personal estate or choses in action, and to advance moneys, securities or credits thereon, on such terms and commissions and at such rates of interest as may be established by the directors. It is expressly provided in this section that the rates of interest therein authorized shall not exceed seven per cent per annum. Interest is the compensation paid by a borrower of money to the lender of it for its use. If this one per cent on the gross amount of the debt was interest or compensation for the use of the money, then it was not authorized by the charter. If it was *bona fide*, a commission for the management, charge or custody of the warehouse receipts of Oakley may have been a lawful charge. If it was called a commission when it was really interest, then it was an attempt at an evasion of the prohibition of the charter and of the usury law. The complaint alleged that it was the latter, and avers facts which, undenied, tend strongly to show this, and thus presents a fair issue of fact for the jury. It is not an issue of law which can be joined in by demurrer.

Third. By the act of the legislature, passed April 6th, 1850 (Laws of 1850, chap. 172, p. 334), entitled "An act to prohibit corporations from interposing the defence of usury in any action," it was enacted that no corporation shall hereafter interpose the defence of usury in any action. (§ 1.)

It is claimed by the defendant that, by the operation of this statute, the plaintiff is prohibited from assailing the title and control of this property in the defendant, on the ground

that there was usury in the transaction by which a title and control was acquired by the defendant.

It cannot now be contended that the effect of this statute is limited to the case of a corporation made a party defendant in an action, and setting up usury as a defence thereto, though it is not to be denied that such is the primary or superficial meaning of the word defence. It denotes the means by which the defendant prevents the success of the plaintiff's action. But the courts have interpreted it, in this statute, to mean more than the resistance of an action by a reliance upon the usury laws, and to mean any position or attitude in an action in which a corporation seeks to avoid its own contract by showing that it is usurious. (*Curtis* v. *Leavitt*, 15 N. Y., 9; *Southern L. & T. Co.* v. *Packer*, 17 id., 51; *Rosa* v. *Butterfield*, 33 id. 665; *Butterworth, Recr.*, v. *O'Brien*, 23 id., 275.)

This interpretation was adopted, for that the contrary would defeat, it was said, all the beneficial aims of the act, and because the courts were constrained so to do to save the purpose of it. (33 N. Y., *supra*.)

There are, doubtless, expressions in some of these cases which convey the idea of a legislative intention in passing the act to repeal the usury laws so far as corporations are concerned. But the force of the reasoning in them as a whole, and the bearing of the facts therein, are to the result that the purpose of the act was to prevent the avoidance by a corporation of its own contract, for the reason that it was made in contravention of the laws against usury. To reach this result the courts were obliged to put upon the language of the act a construction which enlarged the usual meaning of the word defence. They did this to reach the end at which the legislature obviously aimed, and to avoid incongruities of adjudication which would otherwise result, not from any essential difference of the principle involved in different cases, but from the different position of a corporation as party plaintiff or defendant. They held that whether defendant resisting the enforcement of its contract because it was usurious, or

plaintiff seeking to annul its contract for that reason, a corporation is equally obnoxious to the statute of 1850.

The facts of these cases, and the questions raised in them, did not carry the binding force of these authorities further than to the refusal to a corporation of the benefit of the usury laws when its own contract was, for usury in it, by itself impugned as vicious.

This court is now asked to go further, and to say that where a corporation has rightfully succeeded to a cause of action dependent upon the provision of the usury law, and which, in the hands of its assignor would be prevalent, the act of 1850 forbids the assertion of it. It is asked to decide that whoever the parties to the contract, a corporation succeeding to the legal rights of a party who might avail himself of usury, either for attack or defence, is precluded by this statute from setting up that right. We do not find anything in the language of that act which brings us to that conclusion. Nor is there any such thing in the legislative purpose with which it was passed, and which is made plain in the cases we have cited.

It is not necessary, to maintain this action, to add or interpolate a word, or to change the meaning of a word in the act, or to come short of sustaining the object of the legislature. The plaintiff, in the usual and primary sense of the word defence, is not interposing usury as a defence. Nor is it seeking to avoid any contract made by it for the vice of usury therein. These considerations meet and dispose of all the points presented to this court in the oral argument addressed to it for the defendant. Upon the printed points handed up, other positions are taken. But these are fully met and answered in the thorough and learned opinion delivered by Jones, J.,* at Special Term; and it is not necessary that they be especially adverted to here.

---

* The opinion of Jones, J, referred to, contains a careful and elaborate review of the authorities upon the question as to who can avail himself of the plea of usury. He concludes as follows:

"From the above reviewed cases the following rules may be extracted.

Opinion of the Court, per FOLGER, J.

The judgment should be reversed, with costs to the appellant; and the appellant should have judgment on the demurrer, with leave to the defendant to answer in the action on payment of the costs of the action since the joining of issue

"First. All privies to the borrower, whether in blood, representation or estate, may, both in law and equity, by the appropriate legal and equitable remedies and defences, attack or defend against a contract or security given by the borrower which is tainted with usury on the ground of such usury, where such contract or security affects the estate derived by them from the borrower. (Ord on Usury, p. 131; *Dix* v. *Van Wyck*, 2 Hill R., 522; *Mason* v. *Lord*, 40 N. Y. R., 476; *Jackson* v. *Dominick*, 14 J. R., 435; *Post* v. *Dart*, 8 Paige R., 640.)

"Second. That a grantee or assignee of a borrower who does not take his grant or assignment subject to a lien on the property granted or assigned, created by the borrower, which is tainted with usury, is privy in estate with the borrower as to the entire interests in the property described in the assignment or grant, as deriving from such borrower such entire interests, and, as such privy, may attack or defend against such lien, under the first rule. (Cases cited under the first and third rules.)

"Third. But if a grantee or assignee takes his assignment or grant from the borrower, subject to a lien on the property tainted with usury, then, as to so much of the property which is necessary to satisfy such lien, he is not in privity in estate with the borrower, for so much of the property is not assigned or granted to him; and therefore he does not, as to such lien, come within the first rule. (*Bullard* v. *Raynor*, 30 N. Y., 206; *De Wolf* v. *Johnson*, 10 Wheat. R., 369; *Sands* v. *Church*, 2 Seld. R., 347; *Hartley* v. *Harrison*, 24 N. Y. R., 172.)

"Fourth. A borrower may himself pay an usurious debt; and if he does, neither himself nor any other person can attack such payment on the ground of the usurious character. He may also, therefore, appropriate property for its payment, and make such appropriation by assigning the property in trust for the payment of the usurious debt; and if he does, neither the assignee nor any other person can (unless he attack the assignment for fraud) claim that property so appropriated shall not be applied to the payment of the usurious debt. The bare fact that such an assignment provides for the payment of an usurious debt will not of itself alone render the assignment usurious and void. (*Green, Ex'x, etc.,* v. *Morse et al.,* 4 Barb. R., 332; *Murray* v. *Judson*, 9 N. Y. R., 73.)

"Fifth. That one who does not claim through or under the borrower does not stand in privity with the borrower, and does not come within the first rule. (*Williams* v. *Buck*, 2 Transcript Ap., 133; *Ohio and Mississippi R. R. Co.* v. *Kasson*, 37 N. Y. R., 218.)

"Sixth. An usurer cannot take advantage of his own usury to avoid a contract he has entered into. (*Billington* v. *Wagoner*, 33 N. Y. R., 31.)

of law therein; the answer to be served within twenty days after notice of the filing in the court below of the remittitur from this court.

All concur.

Judgment accordingly.

---

"Seventh. The passage of the aforesaid section 8 (1 R. S., 772, § 8) in nowise interferes with the then existing remedies at law for attacking, or defending against an usurious contract, or a security tainted with usury, nor with the parties who were entitled to use such remedies; nor did it interfere with the then existing equitable jurisdiction and remedies for attacking or defending against such a contract or security, nor with the parties who were entitled to use such remedies, save as laid down in the next rule. (Compare *Post* v. *Utica Bank*, 7 Hill R., 391; *Rexford* v. *Widger*, 2 Coms. R., 131; *Schermerhorn* v. *Talman*, 4 Kern. R., 127; *Livingston* v. *Harris*, 11 Wend. R., 330, with the cases cited under rule first.)

"Eighth. The said eighth section restrains the previously exercised equitable jurisdiction of compelling all persons who come into a court of equity for relief against a contract or a security tainted with usury, or to obtain a discovery of usury in aid of the prosecution, or defence, of an action at law, to pay the sum actually loaned and the legal interest thereon, and to offer so to do in the bill of complaint as a condition of granting the relief sought, to those cases where the parties thus coming are not the borrowers themselves, their heirs, devisees, or personal representatives, leaving the exercise of equitable jurisdiction as to those persons who are not the borrowers themselves, their heirs, etc., precisely as it was before the passage of the section. (See cases cited under rule seven.)

"Ninth. A borrower can make no agreement with his grantee or assignee whereby such grantee or assignee can prosecute in a court of equity an action in the name of the borrower for the cancelment of usurious securities given by the borrower, and the court will not give effect to any such agreement if made. (*Boughton et al.* v. *Smith et al.*, 26 Barb. R., 635.)

"The present case falls within the first and second rules.

"The defendant, however, insists, as a second ground of demurrer, that there can be no affirmative relief against an usurious contract, or a security tainted with usury, except by bill in equity, under the said section 8. From this premise, if correct, the conclusion would flow that the demurrer is well taken; for then the case would fall within the eighth rule, and the plaintiff, not being the borrower, or his heir, devisee, or personal representative, would be obliged to offer in his complaint to pay the principal sum loaned, and lawful interest thereon, and his complaint would be bad for not containing such offer.

"The premise, however, is incorrect; for that section, as above shown, does not interfere with existing legal remedies, such as trover, replevin, ejectment."