BETSEY P. MORE, Individually and as Guardian, &c., of
JAY MORE and others, Respondent, v. CHRISTOPHER
E. DEYOE, FRANCIS R. GILBERT and ISAAC H. MAY-
NARD, Appellants.

*Action of ejectment—power of the court to revive it, in favor of the guardian in
socage of the infant devisees of the original plaintiff—tenants may be joined as
defendants with those claiming title—Mortgage—right of successors in inter-
est of mortgagor to attack it for usury—when purchaser at sale on foreclosure
not protected against the defense of usury—Section 6 of chapter 17 of 1858, and
section 6 of title 5 of chapter 330 of 1873 are constitutional—Evidence—what
admissible to show the value of the use of land—When a mortgagee may testify
as to his intention, in order to repel defense of usury.*

This action was commenced by one Taylor More to recover certain real prop-
erty, together with damages for the withholding thereof. After the joinder
of issue herein, More died, leaving a will, by which he devised one-third
of his property to his wife, the plaintiff, and the other two-thirds to his
minor children. Thereafter an order was made reviving and continuing the
action in the name of the plaintiff, individually, and as guardian in socage
of the children, in the place and stead of the original plaintiff. In an
amended answer served by the defendants, no specific objection to the right
of the plaintiff as guardian in socage for her children to have the action so
revived and continued, was taken.

*Held*, that as no appeal had been taken from the order so reviving and con-
tinuing the action, the case stood as though the action had been originally
commenced by the plaintiff, to recover in her own right the part of the
premises devised to her, and as the guardian in socage of her children, the
part devised to them, and that such an action was clearly maintainable.

That the court had, under 3 R. S., 6 ed., 575, and the Code of Civil Procedure,
§ 757, power to so revive and continue the action.

In an action to recover real property, those who claim to be the owners thereof
are properly joined as defendants with the tenants who are in possession
under them.

On March 1, 1877, W. P. More executed a mortgage upon certain real estate
belonging to him, to one Taylor More, the plaintiff's testator, who thereafter
foreclosed the same by advertisement, and purchased the premises at a sale
had on July 8, 1878. On April 23, 1874, More had executed a mortgage
upon the same premises to the defendants, Gilbert and Maynard, who fore-
closed the same by advertisement, and bid in the premises at a sale had on
July 17, 1878. On April 15, 1875, W. P. More had conveyed the premises
to one Crary, subject to the mortgage given to the defendants, Gilbert and
Maynard, it being verbally agreed and understood that Crary should pay
and discharge the same. December 15, 1875, the premises were taken
back by, and possession thereof surrendered to More by Crary, and the
deed, which had not been recorded, was surrendered to him. Thereafter

Crary quit-claimed his interest in the land to the said More. April 30, 1877, More conveyed the premises to his son, who conveyed them to his mother, who, on September 25, 1877, conveyed them to Gilbert and Maynard, to whom the possession thereof was, on December 1, 1877, surrendered.

In an action by Taylor More to recover the possession of the land, *Held*, that the conveyance from W. P. More to Crary, subject to the mortgage, and the subsequent surrender of the premises by the latter, did not estop or prevent W. P. More from setting up that the mortgage given to Gilbert and Maynard was void for usury.

That Taylor More, by his purchase of the premises at the sale had upon the foreclosure of the mortgage given to him, acquired the same right to attack the defendant's mortgage for usury as had his mortgagor.

That Gilbert and Maynard acquired no advantage by purchasing the premises at the sale had upon the foreclosure of their mortgage, as they were not *bonâ fide* purchasers without notice of the usury.

Section 6 of chapter 17 of 1858, and section 6 of title 5 of chapter 330 of 1873, being the charter of the village of Deposit, which village is situated partly in the county of Delaware and partly in the county of Broome, provides that "all notices or other publications required by law to be published in the county of Delaware, and all notices or other publications required by law to be published in the county of Broome, may be published in any newspaper printed in said village, and shall be regarded, and shall have the same effect, as if the same were published in the counties of Delaware and Broome, or either of them."

*Held*, that this provision was not a violation of section 16 of article 3 of the Constitution, declaring that no private or local bill shall embrace more than one subject, which shall be expressed in its title, and that the act was constitutional and valid.

In an action of ejectment brought against persons claiming title to the land in question, and tenants in possession under them, the plaintiff gave evidence tending to show that the annual use of the premises was worth $500, the taxes to be paid by the lessee. The defendants then put in evidence the lease given to their tenant, by which a rent of $525 was reserved; the lessee agreeing to pay the school and road taxes, and the lessors the town, county, and State taxes. They then offered to prove that the actual receipts of the rents and profits from the farm, after paying the taxes and expenses, amounted to only $325 a year.

*Held*, that the evidence so offered by the defendants bore upon the question as to the value of the use and occupation of the premises, and that the court erred in rejecting it.

The plaintiff sought to avoid a mortgage, given by the person under whom she claimed, to the defendants, on the ground of usury. The usury consisted in the over-valuation of certain railroad bonds transferred by the defendants to the mortgagor, and which formed part of the consideration for which the mortgage was given. Upon the trial, one of the defendants was asked whether at the time the mortgage was taken he believed the bonds were worth the price at which they were taken by the mortgagor, and whether he had any intention of violating the usury law. Upon the plaintiff's objecting, the question was excluded.

*Held,* that this was error; that under the circumstances of this case, the defendant was entitled to testify as to his intention in making the arrangement for the transfer of the bonds.

*Fiedler* v. *Darrin,* 50 N. Y., 437,—distinguished.

APPEAL from a judgment in favor of the plaintiff, entered upon the report of a referee.

This action was brought to recover a farm of about two hundred acres, situated at the village of Moresville, Delaware county. Both parties claim title through one Wilson P. More, who was the owner of the premises, April 23, 1874, and who, on that day, executed a mortgage thereon to the defendants, Gilbert and Maynard, to secure the payment of $10,000. The consideration of the mortgage and accompanying bond was as follows: A prior mortgage on the premises, which Gilbert and Maynard agreed in writing, under their hands and seals, to take up and cancel on or before December 1, 1874, on which was there due, April 22, 1874, $3,576.22; four first mortgage coupon bonds of the Rondout & Oswego Railroad Company, of $1,000 each, bearing interest at the rate of 7 per cent. semi-annually, payable January 1 and July 1 in each year, and upon which there was accrued interest from July 1, 1873, and the balance, $2,423.78, in money, to make up the $10,000.

April 15, 1875, Wilson P. More conveyed the premises covered by the defendants' mortgage and some personal property to one Archibald P. Crary for $16,000. The referee found that there was an implied understanding between the parties at the time of the execution of the deed that Crary should pay the mortgage as a part of the consideration of the conveyance, but refused to find that the deed contained a covenant to that effect.

December 15, 1875, by an agreement between Crary and More, the premises were taken back by W. P. More, and the possession surrendered to him by Crary, and the deed from More to Crary, not having been recorded, was given back to More. On March 11, 1876, Crary executed a quit-claim deed to More, in consideration that More released him from all claims to date, and from all obligations and claims growing out of the contract for the purchase of the premises by Crary of More.

March 1, 1877, Wilson P. More executed another mortgage upon

the premises in question, the store building, and a house and lot worth $1,500, to Taylor More, his brother, to secure the payment of $2,730. April 30, 1877, Wilson P. More conveyed these premises to his son Marcus More, who on the same day conveyed them to Elizabeth More, the wife of Wilson P. More, who, on September 25, 1877, conveyed them to the defendants, Gilbert and Maynard, reserving the possession thereof until December 1, 1877, when she surrendered the premises to them, and they went into possession immediately. The defendants, Gilbert and Maynard, continued in actual possession until April 14, 1878, when they leased the premises to the defendant Deyoe, for one year, at a rental of $525, one-half of which was paid down and the balance to be paid at the end of the year, and the defendant, Deyoe, immediately went into possession under the lease, and was in possession when this action was commenced.

Taylor More commenced proceedings to foreclose his mortgage by advertisement, April 13, 1878, under which a sale was had July 8, 1878, at which Taylor More bid in the premises in question for one dollar, and affidavits of the foreclosure were made and filed and recorded in Delaware county clerk's office, July 12, 1878. The notice of sale was never published in any newspaper published in the county of Delaware, but was published for twelve weeks in the *Deposit Courier*, a newspaper published in the county of Broome, but within the corporate limits of the village of Deposit. The defendants, Gilbert and Maynard, commenced proceedings to foreclose their mortgage by advertisement April 22, 1878, under which a sale was had July 17, 1878, at which they became the purchasers for the sum of $5,000, and affidavits of the foreclosure were made and filed and recorded in Delaware county clerk's office, December 12, 1878.

Taylor More brought this action July 17, 1878, after the sale had taken place upon the foreclosure of defendant's mortgage. Taylor More died February 2, 1879, and by his will devised all his real estate to his widow, the plaintiff, Betsey P. More, and to his minor children Jay, George, Clark, Taylor and Cornelia, one-third to his widow and the remainder to the minor children in equal shares. This will was proved March 3, 1879, and April 8, 1879, an order

was granted at the Delaware Special Term, reviving and continuing the action in the name of Betsey P. More, individually and as guardian in socage of the minor children, in place of Taylor More, deceased, and substituting them as plaintiffs.

The plaintiff sought to recover upon the ground that the defendant's mortgage was void for usury, because there was included in the consideration the sale of the four bonds of the Rondout & Oswego R. R. Co., at their face value, less the accrued interest.

*I. H. Maynard,* for the appellants.   The plaintiff, as guardian in socage, is not entitled to recover the share devised to her minor children by the will of Taylor More.   (2 R. S., 6 ed., p. 1092, §§ 5, 6, 7; 3 Id., p. 169, § 20; *Cagger* v. *Lansing,* 4 Hun, 812; *S. C.,* 64 N. Y., 417.)   The referee erred in refusing to allow the defendants to testify to their intention in transferring the bonds. (*Thurston* v. *Cornell,* 38 N. Y., 281; *Black* v. *Ryder,* 5 Daly, 304.)   Crary and his grantees, including the plaintiff, are estopped from questioning the validity of the defendant's mortgage. (*Burr* v. *Beers,* 24 N. Y., 178; *Ricard* v. *Sanderson,* 41 N. Y., 179; *Thorp* v. *Keokuk Coal Co.,* 48 N. Y., 253; *Wales* v. *Sherwood,* 52 How. Pr., 413; *Ramsey* v. *McMullen,* 5 Abb. New Cas., 246; *Douglass* v. *Wells,* 18 Hun, 88; *Whitney* v. *Gearty,* 14 Id., 498; *Russell* v. *Weinberg,* 53 How. Pr., 468; *S. C.,* 2 Abb. New Cas., 422; *Loomis* v. *Balheimer,* 5 Id., 263; *Douglas* v. *Wells,* and other cases cited, *supra; Post* v. *Dart,* 8 Paige, 639; *Shufelt* v. *Shufelt,* 9 Id., 137; *Sands* v. *Church,* 6 N. Y., 347; *Schermerhorn* v. *Talman,* 14 N. Y., 93; *Hartley* v. *Harrison,* 24 N. Y., 170; *Barthett* v. *Elias,* 2 Abb. New Cas., 364; *Rosa* v. *Butterfield,* 33 N. Y., 665; *Union National Bank* v. *Wheeler,* 60 Id., 612; *Stewart* v. *Bramhall,* 74 Id., 85.)   If there was a covenant on the part of Crary to pay the mortgage debt, it was a covenant running with the land and binding and affecting all persons claiming the land under Crary.   (*Lametti* v. *Anderson,* 6 Cow. 301; *Anderson* v. *Lametti,* 6 Wend., 326; *Astor* v. *Hoyt,* 5 Id., 605; *Astor* v. *Miller,* 2 Paige, 68; *Allen* v. *Culver,* 3 Den., 284; *Martin* v. *O'Connor,* 43 Barb., 514; *Holsman* v. *DeGrey,* 6 Abb. Pr., 79; *Post* v. *Kearney,* 2 N. Y., 394.)   The defendants

must be regarded as mortgagees in possession, and ejectment will not lie against a mortgagee in possession by the mortgagor or his grantees. (Tyler on Ejectment, 41, 52, 67; *Chase* v. *Peck*, 21 N. Y., 581; *St. John* v. *Bumpstead*, 17 Barb., 100; *Winslow* v. *McCall*, 32 Id., 241; *Bolton* v. *Brewster*, Id., 389; *Phyfe* v. *Riley*, 15 Wend., 248; *Fox* v. *Lipe*, 24 Id., 164; *Parsons* v. *Wells*, 17 Mass., 419; *Wilson* v. *Ring*, 40 Me., 116.) Upon these facts, conceding defendant's mortgage to be usurious, they must be deemed mortgagees in possession, to the extent to which they have made payments upon the prior mortgage, and which entered into and formed a part of the consideration of their mortgage. (*Patterson* v. *Birdsall*, 64 N. Y., 294; *S. C.*, 6 Hun, 632; *Gerwig* v. *Sitterly*, 56 N. Y., 214; *Union Trust Co.* v. *Monticello, &c. R. R. Co.*, 63 Id., 311; *Cole* v. *Malcolm*, 66 Id., 363; *Winstead Bank* v. *Webb*, 39 Id., 325; *Williams* v. *Fitzhugh*, 37 Id., 444; *Cook* v. *Barnes*, 36 Id., 520; *Crippen* v. *Hermance*, 9 Paige, 211; *Liddersdale, Ex'r*, v. *Robinson, Adm's*, 2 Brockenborough, 159; *Cottrell's Appeal*, 23 Penn., 294; *Lawrence* v. *Cornell*, 4 Johns. Ch., 545; *Rockwell* v. *Hobby*, 2 Sandf. Ch., 10; *King* v. *McVicker*, 3 Id., 210.) The acts of the Legislature (Laws of 1858, ch. 17, § 6, and Laws of 1873, ch. 330, title 5, § 6), amending the charter of the village of Deposit, authorizing the publication, made in this case, are unconstitutional, being in violation of section 16, article 3, of the Constitution, which provides that "no private or local bill, which may be passed by the Legislature, shall embrace more than one subject, and that shall be expressed in the title." (*People* v. *Hills*, 35 N. Y., 449; *People* v. *O'Brien*, 38 Id., 193; *Gaskin* v. *Meek*, 42 Id., 186; *People* v. *Allen*, 42 Id., 404; *People* v. *Supervisors of Chautauqua*, 43 Id., 10; *Huber* v. *People*, 49 Id., 132; *City of Watertown* v. *Fairbanks*, 65 Id., 585; *Matter of Lands in Flatbush*, 60 Id., 398; *People* v. *Com'rs*, 53 Barb., 70; *Gaskin* v. *Anderson*, 7 Abb. Pr., N. S., 1; *Town of Fishkill* v. *Fishkill R. R. Co.*, 22 Barb., 634; *Smith* v. *Mayor, &c.*, 34 How. Pr., 508; *People* v. *Common Council*, 13 Abb. Pr., N. S., 121; *Durkee* v. *City of Janesville*, 26 Wis., 697.)

*Arthur More*, for the respondent. The Gilbert and Maynard

mortgage being usurious, the title derived from the foreclosure of the same is absolutely void as to this plaintiff, deriving her title from the foreclosure of the subsequent mortgage given to her testator. (*Van Tassel* v. *Purdy*, 12 Hun, 388; *Carow* v. *Kelley*, 59 Barb., 239; *Dix* v. *Van Wyck*, 2 Hill, 522; *Mason* v. *Lord*, 40 N. Y., 488; *Knickerbocker Ins. Co.* v. *Hill*, 6 N. Y. Sup'm. Ct. [T. & C.], 285; *Mason* v. *Lord*, 40 N. Y., 476.) The foreclosure by advertisement, of a usurious mortgage, will not convey a good title, except to a *bona fide* purchaser at the foreclosure sale. (3 R. S., 5 ed., 861; *Bissell* v. *Kellogg*, 60 Barb., 617; *Hyland* v. *Stafford*, 10 Id., 558; *Jackson* v. *Packard*, 6 Wend., 415; *Jackson* v. *Dominick*, 14 Johns., 435; *Post* v. *Dart*, 8 Paige Ch., 639, approved in 40 N. Y., 486; *Morris* v. *Floyd*, 5 Barb., 136; *Brooks* v. *Avery*, 4 N. Y., 229; *Thompson* v. *Van Vechten*, 27 Id., 568; *Vickery* v. *Dickson*, 62 Barb., 279; *Berdan* v. *Sedgwick*, 40 Id., 359; 13 Alb. L. J., 40.) The action was properly continued in the name of Betsey P. More, the widow, individually, and as mother and guardian of the minor children. (*Seaton* v. *Davis*, 1 N. Y. Sup'm. Ct. [T. & C.], 91; *Bartholomew* v. *Lyon*, 3 Id., 774; *Cagger* v. *Lansing*, 64 N. Y., 418; 3 R. S., 5 ed., p. 2.) The action was properly brought against all the defendants, the landlord and the tenant. (*Carter* v. *Hunt*, 40 Barb., 93; *Abeel* v. *Van Gelder*, 36 N. Y., 513; *Finnegan* v. *Carraher*, 47 Id., 493; Code Civ. Pro., § 447.) Besides, the question is not now in the case, not having been raised by demurrer or answer. (Code of Civ. Pro., §§ 488, 490; *Enos* v. *Leach*, 18 Hun, 141.) The act permitting the publication of legal notices in a paper published in the village of Deposit, is constitutional. Every presumption is in favor of the validity of legislative acts, and the court, if possible, will give the statute such a construction as will enable it to have effect. (Cooley on Const. Lim., 184, 185; *People, &c.* v. *Briggs*, 50 N. Y., 553; *People, &c.* v. *McKinney*, 52 Id., 583; *Roosevelt* v. *Godard*, 52 Barb., 533; *Village of Deposit* v. *Vail*, 5 Hun, 312; *In re Hathaway Will*, 9 Id., 83.) Having in view the peculiar location of this village, and intending to benefit the community embraced within the corporate limits, the Legislature had the right to enact the provision

in question, and such a provision is manifestly within the scope of a general act to amend the charter and to revise and compile the several acts relative to said village. (*People* v. *Briggs*, 50 N. Y., 533; *Village of Gloversville* v. *Howell*, 70 Id., 287; *Harris* v. *People*, 59 Id., 599; *In re Mayer*, 50 Id., 504; *Brewster* v. *City of Syracuse*, 19 Id., 116; *People* ex rel. *Davis* v. *Commissioner of Taxes of N. Y.*, 47 Id., 501; *People* v. *Board of Commissioners*, 67 Id., 568; *People* v. *Lawrence*, 41 Id., 139; *Connor* v. *Mayor*, 5 Id., 285; *Mosier* v. *Hilton*, 15 Barb., 657; *Sharp* v. *Mayor*, 31 Id., 572; *De Camp* v. *Eveland*, 19 Id., 84; *Mills* v. *Charlton*, 29 Wis. 440; 9 Am. R., 578; *O'Leary* v. *Cook Co.*, 28 Ill., 534.) The act in question is a public act. All statutes relating to the service of legal process, and thus affecting the administration of justice, are public statutes. (*People* v. *O'Brien*, 38 N. Y., 193; *In re Vaucene*, 31 How. Pr., 337; *Bretz* v. *Mayor*, 35 Id., 132; *Williams* v. *People*, 24 N. Y., 405; *Burnham* v. *Acton*, 35 How. Pr., 48; *Fall Brook Coal Co.* v. *Lynch*, 47 Id., 522; *People* v. *Davis*, 61 Barb., 464; *Healey* v. *Dudley*, 5 Lans., 120.) The placing by the Legislature, in a private or local bill, of matter of public or general law, does not render the act, so far as the matters of public or general law is concerned, obnoxious to the section of the Constitution in question. (*People* v. *Supervisors of Chautauqua*, 43 N. Y., 13; *People* v. *McCann*, 16 Id., 58; *Williams* v. *People*, 24 Id., 405; *People* v. *Davis*, 61 Barb., 61; *People* v. *Morgan*, 1 Sup'm. Ct. [T. & C.], 111; *Fall Brook Coal Co.* v. *Lynch*, 47 How. Pr., 520; *Richards* v. *Richards*, 76 N. Y., 186.)

BOCKES, J.:

A difficulty seems to exist in this case, which must, as we think, control its decision on this appeal, growing out of the rejection of evidence offered by the defendants on the trial. However, before considering this difficulty, we should examine the questions urged upon our attention by the defendant's counsel, which go to the *entire right of action;* for if the action be not maintainable by the plaintiff at all on the facts proved, the ruling of the referee in the rejection of evidence becomes wholly unimportant; and the case should be put at rest on other grounds.

The action, ejectment, was commenced originally by Taylor More, the husband of the present plaintiff; and issue was joined between the parties by the service of answers by the defendants respectively. Thereupon the plaintiff died, having made a valid will by which he devised to his widow, the present plaintiff, one-third of his real estate, and to his minor children, named in the title of the action, the remaining two-thirds. The action was then, by order of the court, revived and continued by the present plaintiff in her own name, for the recovery of the third devised to her, and also for the recovery of the two-thirds as guardian in socage of her infant children. The defendants thereupon put in an amended answer; but interposed no specific objection to the right of the plaintiff to recover, on the ground that the action could not be revived and continued by her as to the right of the infant children. The case then may be considered as if originally brought by the plaintiff in her own right as to one-third of the premises, and as guardian in socage of the children as to the remaining two-thirds.

It is urged that the action cannot be prosecuted by the plaintiff as to the two-thirds devised to her children. This objection we deem untenable. This is clearly so, if we hold that the case stands the same as if brought by the plaintiff, as guardian in socage, as regards the two-thirds owned by the children. The mother, as guardian in socage of her infant children, may maintain ejectment to recover the possession of their real estate against a party unlawfully withholding it against her right of occupancy. A guardian in socage has the custody of the land of the infant, and may maintain ejectment against one wrongfully in possession. (2 R. S., 6 ed., 1092; 3 Id., 169; *Holmes* v. *Seely*, 17 Wend., 75; *Beecher* v. *Crouse*, 19 Id., 306; *Seaton* v. *Davis*, 1 N. Y. Sup'm. Ct. [T. & C.], 91; *Bartholemew* v. *Lyon*, 3 Id., 774; *Cagger* v. *Lansing*, 64 N. Y., 417.) As the issues were made on the pleadings, the case stood for trial as if originally commenced by the plaintiff in her own right for the part of the premises devised to her, and as guardian in socage for her children, who, as was claimed, owned the remaining part. The right to revive and continue the action in the name of the plaintiff, was determined by the order of revivor, from which no appeal was taken, nor was any specific objection

taken by the defendants' amended answers, thereafter interposed. But the right of revivor, as here granted, seems to be well authorized by statute. (3 R. S., 6 ed., 575; Code of Civ. Pro., § 757; *James* v. *Bennett*, 10 Wend., 540; *Boynton* v. *Hoyt*, 1 Denio, 57; *St. John* v. *Croel*, 10 How. Pr., 253.) The objection that the action was not maintainable by the plaintiff for the two-thirds devised to the children, or could not be prosecuted by her as guardian in socage, is not well taken. The action was also maintainable against Gilbert and Maynard, joined with Deyo, the tenant in possession under them. (Former Code, § 118; Code of Civ. Pro., § 447; *Abeel* v. *Van Gelder*, 36 N. Y., 513; *Finnegan* v. *Carraher*, 47 Id., 493.)

Nor is the objection that the defendants were to be deemed mortgagees in possession tenable. The defendants, Gilbert and Maynard, entered, and held under conveyance to them, from Elizabeth More, who, at the time of making the deed, owned the equity of redemption; and they so held under this deed until the foreclosure of their mortgage, when they became purchasers. But if their mortgage was void for usury, as was found to be the fact by the referee, they could not defend as mortgagees in possession, for then, as to the plaintiff, they had no rights to be protected under it. In that case the defendants could neither build up or maintain any right whatsoever founded upon it, as against any one entitled to insist upon its invalidity. This brings us to the question whether the plaintiff here might so insist.

The plaintiff claimed as devisee under Taylor More, a purchaser on foreclosure sale under a valid mortgage. He held, in law, the position of grantee from the mortgagor. Thus he and his devisees were in privity in estate with the mortgagor; and hence, as has been repeatedly held, might insist upon and set up usury against a prior mortgage given by the same mortgagor, which was an apparent lien on the premises. Taylor More was not to be deemed a purchaser *merely* of the equity of redemption, as regards the holder of the usurious mortgage. But he acquired, by his purchase, the position which the mortgagor held at the time the lien of the valid mortgage took effect, with all the rights then pertaining to the mortgagor. One of those rights was a right to insist that the prior mortgage

was void for usury. Without citing and collating the many cases wherein this subject has been discussed, it is only necessary to refer to the rule as at present settled, given in the note to the case of the *Merchants' Exchange Nat. Bank* v. *Com. Warehouse Co.* (49 N. Y. 635, 643). It is there stated that "all privies to the borrower, whether in blood, representation or estate, may, both in law and equity, by the appropriate legal and equitable remedies and defenses, attack or defend against a contract or security given by the borrower which is tainted with usury, on the ground of such usury, where such contract or security affects the estate derived by them from the borrower." The correctness of this rule is also asserted in a recent case in the Court of Appeals. (*Knickerbocker Life Insurance Co.* v. *Nelson*, MS. opinion by DANFORTH, J.) Here, Taylor More, by his purchase at the foreclosure sale, under a valid mortgage, was in privity in estate with the mortgagor, hence might (as might the latter) insist upon the invalidity of the prior mortgage for usury, both mortgages having been made by the same party. Nor do the defendants, Gilbert and Maynard, gain any advantage over the plaintiff by their foreclosure. They were not *bona fide* purchasers without notice of the usury. (*Jackson* v. *Dominick*, 14 Johns. 435 ; *Hyland* v. *Stafford*, 10 Barb. 558 ; *Bissell* v. *Kellogg*, 60 Id., 617.)

It is urged that the plaintiff's devisor, and those claiming through or under him, are estopped from insisting upon the invalidity of the prior mortgage, because of certain transactions between the mortgagor and parties other than Taylor More. It seems that the mortgagor, W. P. More, after the giving of the mortgage to the defendants Gilbert and Maynard, and before giving the mortgage to the plaintiff, conveyed the premises to one A. P. Crary. The deed to Crary was made subject to the former mortgage. A few months after the conveyance to Crary, it being seen that he could not consummate his purchase, the purchase was in effect canceled by the parties, and the deed to Crary, which had not been recorded, was surrendered and delivered back to the grantor W. P. More, and was destroyed, and after a few months (March 11, 1876), Crary formally quit-claimed the premises back to the grantor. This proceeding between Crary and his grantor, W. P. More, to wit, the

surrender and destruction of the deed to Crary, and the restoration of the title by the latter to his grantor, W. P. More, was evidently intended to restore the parties, as regards the premises in controversy, to the same condition as if the conveyance to Crary had never been executed, and in law and equity it had this effect. In effect it restored the grantor, W. P. More, to his original position in regard to the land in dispute. He could now insist upon the invalidity for usury of the prior mortgage given by him, the same as if he had never sold and conveyed to Crary; and being so situated he made the mortgage to Taylor More under which the plaintiff makes her title. Thus it seems that W. P. More had the right to resist the enforcement of the prior mortgage on the ground that it was usurious at the time he made the mortgage to Taylor More, and the latter, as well as the plaintiff who makes title under him, may also do the same, because in privity in estate with the former.

Again the referee refused to find, and we cannot say that his refusal was erroneous, in view of the evidence submitted, bearing on this question, that Crary covenanted, or agreed in and by the deed to him from W. P. More, to pay off and satisfy the prior mortgage given to Gilbert and Maynard, and if Crary had so covenanted or agreed, it is difficult to see how that would, under the circumstances of this case benefit Gilbert and Maynard in their defense. (*Knickerbocker Life Ins. Co.* v. *Nelson, supra.*) Admitting that Crary would have been estopped by his covenant or agreement on his part, to pay off and satisfy the mortgage, so long as he held the premises, when he and W. P. More canceled that obligation, and the latter was restored to his former position as to the premises, his right to insist upon the usury was also restored to him, if indeed it can be asserted that this right did not continue in him at all times. We are of the opinion that the plaintiff might insist that the mortgage under which the defendants make their claim was void for usury.

It is further urged that the foreclosure by Taylor More of his mortgage, under which the plaintiff makes title, was a nullity. This objection to the plaintiff's right of recovery is put on the ground that the notice of sale was not published in the county of Delaware, in which county the mortgaged premises were situated.

The notice was published in the village of Deposit, situated partly in the county of Broome, and partly in the county of Delaware, and · in that part of the village situated in the county of Broome. It is provided, in the charter of the village of Deposit, that "all notices or other publications required by law to be published in the county of Delaware, and all notices or other publications, required by law to be published in the county of Broome, may be published in any newspaper printed in said village, and shall be regarded, and shall have the same effect as if the same were published in the counties of Delaware and Broome, or either of them." (L. 1858, ch. 17, § 6, p. 31 ; L. 1873, ch. 330, § 6, tit. V., p. 479.) This provision covers the case precisely. But it is insisted that this section occurring in the village charter is unconstitutional, being in violation of section 16 of article 3 of the Constitution, which declares that "no private or local bill, which may be passed by the Legislature, shall embrace more than one subject, and that shall be expressed in the title." The question here presented is not without some difficulties ; but we are of the opinion that the provision under examination does not come within the constitutional inhibition suggested. Very manifestly it is not open to the mischiefs intended to be reached and corrected by this constitutional restraint upon legislation. There is no idea of surreptitious legislation connected with the provision here challenged. And indeed, the subject of it seems germane to village privileges and rights. It must be conceded that it was appropriate to provide, in the village charter, for all subjects and matters connected with the government of the village, and its prosperity in the exercise of public business affairs. So industries might be promoted by appropriate provision in the charter, as a matter within the purview of legitimate legislation, having in view the prosperity and advancement of the citizens. Thus, it was held in *People* v. *Briggs* (50 N. Y., 553), that where the title of a local or private act expresses a general purpose or object, all matters fairly and reasonably connected with it, and all measures which will or may facilitate its accomplishment, are proper to be incorporated in the act, and are germane to the title; and in this case Judge CHURCH says : "It is not requisite that the most expressive title should be adopted, nor

should courts criticise too rigidly the details of a bill to find extraneous matter. Every presumption is in favor of the validity of legislative acts, and they are to be upheld, unless there is a substantial departure from the organic law." This case is an instructive one on the subject under examination, and some of the cases cited there are in point. (See also *Harris* v. *People*, 59 N. Y., 599.) The cases bearing on the question here presented are too numerous to admit of citation, but we think they do not establish a rule rendering the provisions of the charter here challenged unconstitutional and void.

We are then brought to the conclusion that there is no insuperable difficulty in the way of a recovery by the plaintiff, on the facts proved : so be it, that the mortgage under which the defendants make their claim is, in point of fact, invalid for usury. This question of fact the referee found against the defendants. After a careful examination of the proof bearing on this point, we cannot adjudge that his finding is without evidence in its support, or that it is so clearly against the weight of evidence that we can hold it erroneous in law. In such case we must respect the conclusion of the trial court. (*Roosa* v. *Smith*, 17 Hun, 138; *Roe* v. *Boyle*, 7 Weekly Dig., 566.) We do not intend to be understood that, upon a retrial, the question of usury would not be open to the jury or referee upon the same evidence now submitted. Perhaps on this evidence, and such other as shall be given on a retrial, a different conclusion may be reached. We here give no intimation which should control or affect a future hearing on the merits on this issue of fact. What we mean to say is this : that it was for the trial court to weigh, apply and construe the evidence, and, inasmuch as we cannot with reasonable certainty see that a wrong conclusion has been declared, we cannot adjudge it erroneous. We are not at liberty, as the case is presented on this appeal, to adjudge the finding contrary to the truth.

We must now examine the rulings of the referee on the rejection of evidence offered by the defendants.

The plaintiff gave evidence tending to show that the annual use of the premises in controversy was worth $500; the taxes to be paid by the lessee. The defendant put in evidence the lease from

Gilbert and Maynard to Deyo, under which the latter occupied, in which lease the rent was fixed at $525 for the year (lacking a few days), the lessee to pay the school and road taxes, and the lessors to pay all the town, county and State tax levied on the premises. The defendants then put this question to one of the lessors: "What are the net receipts under this lease ?" The question was objected to and rejected. The defendants then offered to prove that the actual receipts of the rents and profits from the farm, after paying taxes and expenses, were only $325 annually, since the action was commenced. The offer was objected to and was also rejected. These rulings, in our judgment, were erroneous. As an item of evidence on the question of the value of the use and occupation of the farm, it was competent to prove what sum was actually received from it as rent. This, of course, was not conclusive evidence of the value of the use of the farm, but it was competent evidence on the subject. The agreed rent would be strong evidence of the real value of the use and occcupation. (*Cary* v. *Gruman*, 4 Hill, 625.) It is from prices offered, agreed upon and paid, that the value of property or of its use is to be determined, and such prices may be given in evidence to test the correctness and fairness of opinions. Indeed, opinions are made up either from public or private sales and contracts, as regards the value of property. Thus it is, that both public and private sales of property are admissible in evidence to determine its true value. (*Smith* v. *Griffith*, 3 Hill, 333 ; *Dixon* v. *Buck*, 42 Barb., 74 ; *Campbell* v. *Woodworth*, 20 N. Y., 499 ; *Gill* v. *McNamee*, 42 Id., 44 ; *Wells* v. *Kelsey*, 37 Id., 143 ; *Harrison* v. *Glover*, 72 Id., 451 ; *Hoffman* v. *Conner*, 76 Id., 121.) The defendants then had a right to show the actual net receipts under the lease, and the offer to show that the actual receipts of rents and profits from the farm did not, in fact, exceed $325, was improperly rejected. It is suggested that the lease was made between the defendants. This fact was ground of criticism, but not ground for the absolute rejection of the evidence. It should be here remarked that this suggestion of the plaintiff's counsel is answered by the facts in several of the cases cited. That the rejection of this evidence may have been injurious to the defendants, is ap-

parent from the amount allowed against them, as damages for the use and occupation of the premises.

The defendants were also refused answers to the following questions put to Mr. Gilbert, to wit: "At the time you made the arrangement with More, did you believe the bonds were worth their face? Did you at the time of making this arrangement have any intention of violating the usury laws?" Such ruling was, in our opinion, erroneous. The alleged usurious agreement was made with Mr. Gilbert, and consisted in an asserted overestimate of railroad bonds which made part of the consideration of the mortgage-debt. It must be borne in mind that there was no specified sum of money offered or demanded as a bonus for the loaning of the money in this case; and in this consists the difference between the case in hand and *Fiedler* v. *Darrin* (50 N. Y., 437). Where a bonus is specified and agreed upon between the parties, whether of money or other valuable thing, the case is not open to the admission of evidence of a purpose or intent to violate the law, for in that case the law itself declares the unlawful intent. Such was the *Fiedler* v. *Darrin* case, cited. But where the act is equivocal in character, and the intent is directly in issue, it may be ascertained by direct questions, as was sought to be done in this case. Not that the answer would be absolutely conclusive, but it would be an item of admissible evidence. Such was the ruling in *Thurston* v. *Cornell* (38 N. Y., 281), a usury case. This case, too, was referred to with approval in *Fiedler* v. *Darrin*, *supra*. (See also *Black* v. *Ryder*, 5 Daly, 304.) The counsel in his brief in this case states the rule correctly, thus: that where there is a direct or express agreement to take money, evidence of the intent of the parties is not admissible; but where the transaction is equivocal, and the illegality of the act depends upon the intention of the parties, the intent must be ascertained in order to characterize the act, and in such case it is admissible to allow the party to testify as to his intention. This statement of the rule is fully sustained by the decisions in each of the cases above cited. Here the bonds were transferred at par value, and such value constituted part of the consideration of the mortgage. It was insisted that the stipulated price of the bonds far exceeded their real value: and their transfer at such price was

but a device and cover for usury. So the question was, whether the sale of the bonds was *bona fide* at the agreed price, or whether the sale was a mere device for obtaining unlawful interest. The question then resolved itself into one of intent. This being so, the defendants were entitled to an answer from the party in that regard. As was said in *Thurston* v. *Cornell* (*supra*), the answer of the party would not be conclusive, but would be proper "to be weighed and considered with other evidence in the case, in passing upon the question of actual intent." The questions referred to were improperly overruled.

It follows that there must be a new trial.

Judgment reversed, new trial granted, costs to abide the event, and reference discharged.

FOLLETT, J., concurred.

LEARNED, P. J.:

I concur in what is said in the foregoing opinion as to the errors in the exclusion of evidence. It seems to me also, that the question of fact as to the contents of the deed to Crary might, as the evidence appears, be properly reviewed in this court. But, if there is to be a new trial, it is not best to discuss that evidence here. And that question of fact should be considered entirely open.

I therefore concur in the result.

Judgment reversed, new trial granted, costs to abide event, and reference discharged.