OPINION OF THE COURT
Bentley Kassal, J.
ISSUES
Should a professional fund-raising organization be re *382 strained pendent lite from soliciting the public for nonprofit groups solely because these groups receive only 25% of the total funds collected? A second question is whether the Attorney-General has power to regulate the fund-raising activities on behalf of groups organized for profit.
In this action for a permanent injunction and related relief, the Attorney-General seeks a preliminary injunction, prohibiting defendants, professional fund raisers, from "soliciting contributions from the public by any means whatsoever, directly or indirectly, within and from the State of New York and from removing, withdrawing and disbursing any funds now on deposit in bank accounts in the name of or under the control of any or all of the defendants and from transferring or disposing of any property received from the public”. Defendants cross-move for an order dismissing the complaint for failure to state a cause of action.
In view of the drastic and extraordinary pretrial relief requested by the Attorney-General and the claims made that the defendants are engaging in a fraud on the public, this court has carefully scrutinized the evidence presented and the authorities relied upon.
FACTS
Most of the evidentiary facts relied upon by both parties are essentially undisputed. It is the interpretation of these facts or the conclusions each side would have the. court draw from them, when supported by such evidence as may be produced at trial, that raise the real issues.
The defendants are professional fund raisers engaged in a business of telephone solicitation of businesses and individuals to purchase advertisements in promotional literature issued in the name of the organizations contracting with defendants. The client organizations include profit-making, nonprofit and charitable organizations and the promotional literature may include a journal, yearbook or a program book for a specific event.
All of the contracts with the client organizations in question have been properly filed and all of the solicitors have been properly registered with the Department of State pursuant to *383 article 6 of the Executive Law. In these respects there has been full compliance.
In essence, it is the position of the Attorney-General that pursuant to the terms of the contracts filed the defendants retained "the lion’s share” of funds received from the public and their failure to so inform the public of this fact is unconscionable, deceptive and a fraud on the public. In support of this position, plaintiff offers the contracts in question which provide the following percentage returns to the respective client organizations:
Per Cent of Total Funds
Organization Raised Received by Organization
Marine Corps League Project 25%
& Funding (a fraternal society of former and present members of the United States Marine Corps)
Colonie High School Sports 25%
Booster Club, Inc. (a nonprofit organization to promote the athletic program of the Colonie Central High School)
Metro Maullers Football Team 25 - 40%
(semipro football team)
Rotterdam Eagles Football Team 25%
(semipro football team)
Bishop Scully High School 25 - 40%
(parochial education institution)
Linton High School Sports Booster 25%
Club (an organization to promote the sports program at Linton High School)
Defendants’ position is that they have complied with all applicable rules and regulations relating to the reporting and conduct of their business, that their contracts with clients in writing clearly set forth the financial terms and that the clients freely and voluntarily engaged defendants to raise needed funds which they were unable to obtain by their own efforts.
They also contend that the contracts are fair, they are rendering valuable service to these organizations in that they receive funds not otherwise available and that at least 35% of *384 the total revenue collected goes toward paying the costs of renting office space, office supplies, printing charges, delivery costs, postage, telephone expenses, bank charges, payroll and other expenses. This leaves defendants with a profit of not more than 40% of the funds raised.
LAW
This application is based primarily on decisional law with some underlying statutory support.
Subdivision 12 of section 63 of the Executive Law permits the Attorney-General to commence an action against a party who engages in "repeated fraudulent or illegal acts or otherwise demonstrate[s] persistent fraud or illegality in the carrying on, conducting or transaction of business”. "Fraud” as used in the statute is defined to include "any device, scheme or artifice to defraud and any deception, misrepresentation, concealment, suppression, false pretense, false promise or unconscionable contractual provisions.”
Section 349 of the General Business Law also permits the Attorney-General to commence an action to enjoin unlawful acts which are defined to include "Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service”.
In support of plaintiffs position that the defendants are committing fraud by the failure to inform the public that they retain "the lion’s share” of funds received, plaintiff relies wholly upon decisional law. While each case cited contains evidence that a solicitor was receiving a. high commission, they also contain many other elements, not present here, as follows:
Matter of Bennett (American-Canadian Ambulance Corps.) (179 Misc 21) — a finding that a corporation had been organized as "shabby subterfuge to enable its creators to realize profits” through "war profiteering”.
People v Stone (24 Misc 2d 884) — although containing some dicta with respect to the impropriety of defendant’s retention of 45% of the funds collected, the Attorney-General’s motion for an injunction pendente lite was denied.
State of New York v ZKG Assoc. (NYLJ, Oct. 29, 1974, p 2, col 2) — defendants failed to comply with statutory registration requirements.
State of New York v Police Benevolent Assn. of Dist. *385 Attorney’s Offices of City of N. Y. (NYLJ, Dec. 30, 1976, p 10, col 2) — the court found the name of the organization was a misnomer, the solicitation violated regulations of the District Attorneys, misrepresentation by the solicitors that they were members of the police, fraud in failing to tell the public that the soliciting organization was really a union of civilian employees and fraud in stating the funds were to be used "to help local police”.
People v National Cancer Hosp. of Amer. (200 Misc 363)— the court found express misrepresentations and fraud in statements made by the solicitors, not merely a failure to disclose the amount retained by the solicitors.
CONCLUSION
The full relief requested by the Attorney-General is far too drastic to be warranted at this stage by the demonstration made. Absolutely no evidence has been submitted in support of plaintiffs position that "there is a danger that the assets consisting of public contributions will be removed from the Court’s jurisdiction, or that the funds will be expended or otherwise diluted.” Therefore, the application for broad injunctive relief with respect to bank accounts and property in defendants’ possession is denied.
Nor has the plaintiff demonstrated at this stage a course of persistent fraud and illegality which would warrant the other relief sought pendente lite. Such relief would in all likelihood put the defendants out of business and grant the plaintiff all the relief sought in the underlying complaint. Whether the defendant is engaging in such persistent fraud or illegality to entitle plaintiff to the relief sought is the ultimate question to be decided and should properly await full trial. The court notes that, unlike the cases cited by plaintiff, there is no showing of any misrepresentations or that defendants failed to file required reports which reveal the terms of the contracts or register its solicitors. Nor have any members of the public apparently complained of pressure tactics by defendants.
However, some relief is in order pendent lite. This court agrees that where a charitable organization is to receive but a small share of the total funds solicited in the name of a charity or a nonprofit organization, the public solicited has a right to know these facts so that people may knowingly decide on that basis whether or not they wish to make their donations. This is not an unreasonable responsibility since defend *386 ants in some measure have already employed this practice in that their receipt for contributions to "Marine Corps League Program” presently states "Thank you for your support. Marine Corps. League Project & Funding Committee retains 25% of all program money. The balance is applied to administrative and fund raising expenses.” (Emphasis added.)
Accordingly, the defendants are directed pendente lite to communicate the following information in all solicitations, by whatever form, with respect to the organizations involved in this application.
1. The percent of the total funds actually going to the organization; and
2. That the remaining funds are being used for fund-raising expenses.
The fact that defendant’s clients expressly agreed to the terms of the contracts should not preclude the Attorney-General from protecting the public’s rights in this situation. The contracts with the nonprofit organizations are not merely bilateral, but rather establish a triangular relationship with the public as the third party whose interest should be protected. However, since these clients do have a very real interest in the outcome of this litigation, they should be on notice of this action and all future applications so that they may seek to intervene, if appropriate and desired.
The cross motion to dismiss the complaint is denied except as to the third cause of action which is dismissed for the following reasons:
In the third cause of action, plaintiff seeks to restrain defendants from acting on behalf of two semiprofessional football teams, where defendants solicit the public for advertising for football programs and to void these contracts. Whether the persons solicited thought they were "boosters” or sincerely thought the advertisement was a good business expense in that it would be seen by a purchasing or reading audience is not the concern of the Attorney-General. A profit-making business may contract for the solicitation of advertising in the same manner, as to organizations like the New York Yankees in its game programs or any legitimate theatre in its playbill or show programs. In this case, the ads for the Rotterdam Eagles or the Metro Maullers are not charitable contributions by a misguided public and should not be subject to State scrutiny, barring complaint and proof of misrepresen *387 tation by the contracting party or by any proper statutory proscription.