JAY H. MARCUS et al., Appellants-Respondents, v JEWISH NATIONAL FUND (KEREN KAYEMETH LEISRAEL), INC., Respondent-Appellant.

First Department, June 21, 1990

## APPEARANCES OF COUNSEL

*Howard M. Rubin* of counsel *(Jack Segal* with him on the brief; *Goldman, Drazen, Rick, Steiner & Rubin,* attorneys), for appellants-respondents.

*Andrew P. Brozman* of counsel *(Stephen Wagner* and *Jennifer A. Cohen* with him on the brief; *Anderson Kill Olick & Oshinsky, P. C.,* attorneys), for respondent-appellant.

## OPINION OF THE COURT

MILONAS, J.

Plaintiffs are supporters of certain groups whose aims include the development of Jewish life in both Israel and the territories acquired during the Six-Day War (past the so-called Green Line). Defendant Jewish National Fund, Inc. (JNF) is a major charity in the United States which collects contributions for land reclamation and other projects in Israel. In their complaint, plaintiffs allege that for more than 20 years, defendant has misrepresented in its advertisements, circulars, brochures and literature that it allocates funds for charitable use throughout Israel, including beyond the Green Line, when, in fact, it has failed to distribute resources to Green Line areas, thereby deceiving and misleading contributors and potential donors. Accordingly, in soliciting donations, defendant, among other supposedly deceptive practices, is purported to depict a map specifically showing and naming Judea, Samaria, Gaza and the Golen Heights, all territories located over the Green Line, falsely suggesting that contributions collected by defendants from American donors are being expended in these regions. In that connection, plaintiffs asserted six causes of action, claiming (1) common-law fraud, (2) misrepresentation, (3) false advertising pursuant to General Business Law § 350, and (4) for a permanent injunction. The fifth and sixth causes of action were dismissed by the Supreme Court, which ruling is not being appealed, and, thus, is not before us now.

Defendant moved under CPLR 3211 (a) (7) and CPLR 3016 (b) to dismiss the complaint on the ground of failure to state a cause of action and not explaining in sufficient detail the circumstances constituting the fraud misrepresentation. In addition, defendant argued that the complaint presents a nonjusticiable political question. Plaintiffs then cross-moved for an order pursuant to CPLR 6301 to enjoin defendant, pendente lite, from making, publishing, distributing and disseminating any advertisement, literature, circular or brochure

which represents, implies or states that JNF allocates American contributions to charitable projects in any lands beyond the Green Line. They also sought leave to amend the complaint to include section 349 of the General Business Law, as well as section 350, as a basis for relief under the third cause of action and also to add six additional parties as plaintiffs. The Supreme Court thereafter granted defendant's motion only to the extent of dismissing the first, second, fifth and sixth causes of action, granted plaintiffs' cross motion for a restraining order and to amend their complaint and required plaintiffs to file an undertaking in the amount of $1,000. Although the court subsequently modified the terms of the injunction to allow JNF to show maps including areas over the Green Line so long as a disclaimer was printed on the same page as the illustration, no appeal has been taken from this order since it is defendant's position that no restriction of its right to solicit donations is legally permissible. In any event, both parties have appealed or cross-appealed from the Supreme Court's first order, plaintiffs urging that the first two causes of action should not have been dismissed and defendants objecting to the fact that the entire complaint was not dismissed and that plaintiffs were accorded injunctive relief.

■ At the outset, it should be noted that this controversy does not require the court to determine whether the State of Israel encompasses territories across the Green Line. The only issue raised by plaintiffs is whether defendant is misrepresenting the use to which funds obtained from contributors are put. Therefore, there is no political question involved herein. While the solicitation of charitable donations is a form of protected speech, it is subject to narrowly drawn government regulation designed to protect the public from fraud or other deceptive practices (*Riley v National Fedn. of Blind,* 487 US 781). Thus, as the United States Supreme Court declared therein, States need not "sit idly by and allow their citizens to be defrauded", and "[t]he interest in protecting * * * the public * * * from fraud is, of course, a sufficiently substantial interest to justify a narrowly tailored regulation" (*Riley v National Fedn. of Blind, supra,* 487 US, at 792, 795). Even purely commercial speech, which may be scrutinized under false advertising and deceptive practices statutes, is entitled to certain constitutional safeguards (*Virginia Pharmacy Bd. v Virginia Consumer Council,* 425 US 748). The crucial factor in ascertaining if particular speech may be regulated or limited by government is whether it proposes a commercial transac-

tion *(Zauderer v Office of Disciplinary Counsel,* 471 US 626; *Bolger v Youngs Drug Prods. Corp.,* 463 US 60).

■ However, assuming that JNF's advertisements, brochures and other solicitations are not strictly commercial notwithstanding that they seek monetary contributions, their contents are certainly not exempt from having to comply with the strictures against false advertising and other deceptive practices. Indeed, defendant has failed to demonstrate that there is an exception in the law that would insulate the fundraising activities of nonprofit organizations from the same prohibitions against committing dishonest or fraudulent acts that are applicable to groups and individuals engaged in commerce *(see,* General Business Law §§ 349, 350; *Riley v National Fedn. of Blind, supra).* Unlike the situation wherein advertising is directed at influencing public opinion with respect to political, economic or social issues, which is entirely protected by the First Amendment and is not, therefore, covered by sections 349 and 350 of the General Business Law *(New York Pub. Interest Research Group v Insurance Information Inst.,* — AD2d — [1st Dept 1990]; *see also, First Natl. Bank of Boston v Bellotti,* 435 US 765, *reh denied* 438 US 907), defendant herein is endeavoring to collect money from potential contributors, not to persuade or educate people concerning a particular matter. Certainly, a donor to a charity should be fully informed with respect to the use to which the contribution is being put and should not be misled into believing that the funds will be applied for one purpose when, in reality, they are being utilized somewhere else. Consequently, plaintiffs, having adequately established that JNF's advertisements and brochures may be deceptive in some material respect, and as persons who have been misled by these practices, are authorized to maintain this lawsuit *(see, People v Volkswagen of Am.,* 47 AD2d 868).

■ CPLR 6301 provides that a preliminary injunction may be issued in any action where a permanent injunction is being sought. Thus, the only question before the court is whether plaintiffs have shown a likelihood of success on the merits, irreparable injury absent preliminary relief and a balancing of the equities in their favor *(Grant Co. v Srogi,* 52 NY2d 496, 517). Since the Supreme Court was warranted in concluding that plaintiffs have demonstrated all three criteria, the injunctive relief was appropriately granted. Clearly, if JNF were to be allowed to persist in its deceptive practices, there would be a significant risk that people would read defendant's literature

and contribute moneys under the mistaken impression that their donations would be allocated to territories across the Green Line and, thereby be irreparably injured. Similarly, the equities are in plaintiffs' favor inasmuch as they wish to preserve the status quo and not prevent defendant from soliciting donations but merely restrain it from employing fraudulent and misleading maps and statements. Finally, it is evident that there is a strong likelihood that plaintiffs will ultimately prevail on the merits in this litigation.

However, the Supreme Court was in error in dismissing the first two causes of action in the complaint. In deciding a motion pursuant to CPLR 3211 (a) (7), the "sole question presented for our review is whether the plaintiff's complaint states a cause of action. As such, we accept, as we must, each and every allegation forwarded by the plaintiff without expressing any opinion as to the plaintiff's ability ultimately to establish the truth of these averments before the trier of the facts. * * * If we find that the plaintiff is entitled to a recovery upon any reasonable view of the stated facts, our judicial inquiry is complete and we must declare the plaintiff's complaint to be legally sufficient" (219 Broadway Corp. v Alexander's, Inc., 46 NY2d 506, 509). In that regard, plaintiffs' pleadings contain all of the elements necessary to assert a cause of action for both common-law fraud and misrepresentation, including the precise fraudulent practices and misrepresentations of which they complain. Contrary to the holding of the Supreme Court that the first two causes of action are defective in failing to particularize which alleged false advertisements plaintiffs relied upon in making their donations, plaintiffs were under no obligation to correlate certain contributions with specific advertisements. They urge that JNF's wrongful conduct consists of a continuous practice of using misleading maps and statements to deceive the public into believing that charitable contributions are being allotted to lands across the Green Line; plaintiffs are not relying on separate acts of false advertising. Moreover, the nature of the alleged fraud and misrepresentations are set forth "in sufficient detail to inform the defendants of the substance of the claims" (Limmer v Medallion Group, 75 AD2d 299, 302). We have considered the parties' remaining contentions and find them to be without merit.

Therefore, the order of the Supreme Court, New York County (Shirley Fingerhood, J.), entered on March 27, 1989, which granted defendant's motion to dismiss the complaint

pursuant to CPLR 3211 to the extent of dismissing the first, second, fifth and sixth causes of action, denied defendant's motion in all other respects, granted plaintiffs' cross motion pursuant to CPLR 6301 to the extent of restraining defendant, pendente lite, from distributing advertisements, literature, circulars and brochures depicting a map of Israel with territories beyond the Green Line, granted plaintiffs' cross motion pursuant to CPLR 3025 for permission to serve an amended complaint, and directed that plaintiffs file an undertaking in the amount of $1,000, should be modified, on the law, to the extent of reinstating the first and second causes of action in plaintiffs' complaint, and otherwise affirmed, without costs or disbursements.

KUPFERMAN, J. P. (dissenting). I would modify and dismiss the complaint in its entirety.

The defendant, Jewish National Fund (Keren Kayemeth Leisrael), Inc. (JNF), is an American charity devoted to the afforestation, reclamation and development of the State of Israel. It was founded in 1901 and is an eleemosynary institution governed by the New York State Not-for-Profit Corporation Law and section 501 (c) (3) of the United States Internal Revenue Code (26 USC § 501 [c] [3]), which provides for tax exempt treatment. It is affiliated with, but separate from, an Israeli organization known as Keren Kayemeth Leisrael, which translates into English as the Jewish National Fund.

JNF concedes that its policy is to allocate its charitable funds to works within Israel's pre-1967 borders. The plaintiff contends that JNF deceives the public by indicating that it allocates funds over the so-called Green Line. The area beyond the Green Line is basically the West Bank and the Gaza Strip.

Among other things, the complaint alleges common-law fraud, misrepresentation, and false advertising under General Business Law §§ 349 and 350.

The IAS court dismissed the first, second, fifth and sixth causes of action. It also restrained the defendant, pendente lite, from distributing any material depicting a map of Israel showing territories beyond the Green Line. This injunction was subsequently modified, based on the defendant's concession that it would include a disclaimer in its solicitations making it clear, without conceding the truth of the plaintiff's contentions, that funds contributed to the JNF of America would be used for projects only within the Green Line.

With respect to the third cause of action, the Attorney-

General of the State of New York is empowered to protect the public in the event there is any deception by a charitable group. *(State of New York v Francis,* 95 Misc 2d 381 [Kassal, J.], *affd for reasons stated* 67 AD2d 640.) The plaintiffs cannot, as private attorneys general, engage in an enforcement venture except pursuant to General Business Law § 349 (h), and, in any event, a private person's right of action is no greater than the Attorney-General's. Section 349 (a), which declares unlawful deceptive acts "in the conduct of any business, trade or commerce", does not seem to apply to the charitable solicitation here involved. *(See, Matter of Lefkowitz v Burden,* 22 AD2d 881.) Moreover, the defendant has no obligation to use its funds other than in accordance with its charter. There is no contention that the funds are not used for a purpose for which the defendant is organized. Plaintiffs would have the defendant cover all bases while the defendant is satisfied to cover only a portion thereof. Plaintiffs are not deceived, rather they are unsatisfied. There is no " 'intentional infliction of temporal damage' ". *(See, Advance Music Corp. v American Tobacco Co.,* 296 NY 79, 84.)

The leading case on charitable solicitation of funds, *Riley v National Fedn. of Blind* (487 US 781), makes it clear that such solicitations involve speech protected by the First Amendment.

The plaintiffs have not shown in what way they have been injured by the activities of the defendant. They merely contend that political concerns for Israel would require that the defendant use funds, collected in the United States, in a political manner. It is not the function of this court to decide such a political or foreign policy question. *(See, Baker v Carr,* 369 US 186, 217.) New York State has no interest in deciding where in Israel funds legitimately collected here shall be spent. *(See, Central Hudson Gas & Elec. v Public Serv. Commn.,* 447 US 557.)

SULLIVAN, ASCH and SMITH, JJ., concur with MILONAS, J.; KUPFERMAN, J .P., dissents in an opinion.

Order, Supreme Court, New York County, entered on or about March 27, 1989, modified, on the law, to the extent of reinstating the first and second causes of action in plaintiffs' complaint, and otherwise affirmed, without costs and without disbursements.