■ ESTHER SEIDEL et al., Respondents, v 18 EAST 17TH STREET OWNERS et al., Appellants, et al., Defendants.—Order, Supreme Court, New York County (Kristin Booth Glen, J.), entered December 4, 1990, which, *inter alia,* denied defendants-appellants' motion to dismiss the complaint pursuant to CPLR 3211 (a) (7), affirmed, for the reasons stated by the trial court, without costs.

In addition to the issues delineated in Justice Glen's well-reasoned and comprehensive analysis, we note that the transaction in question may be susceptible to interpretation as a joint venture, and that the covenant of good faith implicit in all contracts would, in any event, dictate that plaintiffs realize the full benefit of this "investment opportunity", as did Ellen Raacke, whose mortgage loan and terms were identical to those of Eta Herbst.

We further note that Ellen Raacke, who was represented by her own, independent counsel throughout this transaction, received her full payment on September 25, 1986, three and one-half weeks after the death of Eta Herbst. Both had executed, as one party, a single agreement with defendant-appellant Southside Development Company ("Southside") on October 18, 1982. Paragraph 2 of that agreement contained an express covenant that the two second mortgages were co-equal, and specified as follows: "There shall be no preference of either second Mortgage over the other, regardless of whether one second Mortgage is recorded and the other is not, and any action on one second Mortgage to enforce its provisions will be deemed taken on behalf of both."

These circumstances raise the question of whether defendants have dealt fairly with plaintiffs, a factual issue for resolution at trial. (R. W. Kern, Inc. v Circle Indus. Corp., 158 AD2d 363.)

Nor would it be appropriate, as urged by the dissent, to reject, as a matter of law, the applicability of estoppel in pais at this juncture. Maurice A. Reichman, who proposed the transaction to Eta Herbst, acted as attorney for Southside and was one of its principals. For the purposes of CPLR 3211 (a) (7), we must accept plaintiffs' allegations as true (Marcus v Jewish Natl. Fund, 158 AD2d 101) and they have asserted that Mrs. Herbst relied upon the representations of Southside largely because of her relationship with Reichman, whom she considered a friend and expert in these matters. In short, we would conclude that dismissal under these circumstances "does not appear to be required in order to fulfill the public policy and purposes of the usury laws." (Angelo v Brenner, 90 AD2d 131, 133.) Concur—Murphy, P. J., Ellerin and Kassal, JJ.

Milonas and Wallach, JJ., dissent in a memorandum by Wallach, J., as follows: In this action brought by the estate of a deceased lender, Eta Herbst ("Lender"), to foreclose a mortgage based upon an alleged default in payment of the principal sum of $75,000, the corporate owner of the encumbered cooperative building known as 18 East 17th Street Owners Inc. ("Owners") and a partnership stockholder in the cooperative and original mortgagor, Southside Development Company ("Southside"), have both moved to dismiss the complaint under CPLR 3211 (a) (1), asserting a defense based on documentary evidence, and, under subdivision (a) (7), urging failure to state a cause of action. We all would affirm the ruling of the motion court that based on the documents contained in the

record, the interest rate of this mortgage (28.6 percent per annum) is usurious on its face as exceeding 16 percent, the maximum permitted by law (see General Obligations Law §§ 5-501, 5-511; Banking Law § 14-a). Thus, absent any disabilities to assert the usury defense, the mortgage is void and must be surrendered together with the bond and the action dismissed *(Szerdahelyi v Harris,* 67 NY2d 42, 47-48).

It further appears that even the finding of a 28.6 percent annual rate does not fully describe the windfall already recovered by plaintiffs' decedent in connection with her loan to Southside of $150,000, for which she received a bond and this mortgage in the face amount of $225,000. The loan agreement annexed to the complaint provided (para 7) that "Lender shall have the option to exchange the outstanding balance of $75,000 remaining on each of the Mortgages for shares of stock and the proprietary lease allocated to any of the floors from 2 through 7 which have not been sold". The agreement further provided (para 7 [c]) that upon the Lender's exercise of this option, and delivery to her of the appropriate shares of stock and proprietary lease pertaining to the elected floor, "the *Lender shall give Southside a duly executed and notarized satisfaction of mortgage"* (emphasis added). There is no dispute that Lender exercised this option and resold her interest at a profit of $162,000, thus triggering her obligation to satisfy the mortgage.

Somewhat inexplicably, defendants have not directly urged the applicability of paragraph 7 in support of their motion, but since plaintiffs-executors invoke the agreement and the complaint rests squarely upon it, they are clearly bound by duty imposed upon their decedent to deliver a satisfaction of the mortgage they seek to foreclose. And, of course, this duty bears heavily upon the equities involved in the doctrine of estoppel in pais, which plaintiffs also invoke. Also relevant on that score is the undisputed fact that as a result of her exercise of the option and subsequent sale of the shares and lease appertaining thereto, Lender's ultimate recoupment on her $150,000 loan was $312,000 of principal plus $67,500 interest at 12 percent from October, 1982 through August, 1986, amounting in all to $379,500.

In denying defendants' motion to dismiss, the motion court identified two issues which allegedly gave rise to questions of fact for trial: (1) whether the conveyance of title from the sponsor, Southside, to the coop corporation, Owners, "was made subject" to the Lender's mortgage (thus, in effect, waiving the availability of the usury defense at least to Owners);

and (2) whether the role played in the transaction by one Maurice A. Reichman, Esq., who was and is a partner in Southside, an officer of Owners, and who, as an attorney at law, had prepared the loan papers, could create an estoppel in pais to bar invocation of the usury defense by either defendant. I disagree. In my view these two contentions present only issues of law which must be resolved on this record against plaintiffs.

(1) The "waiver" issue: Justice Glen, in her thoughtful opinion, recognized that while a corporation such as Owners is generally barred from interposing the defense of usury (General Obligations Law § 5-521 [1]), an exception exists where a corporation succeeds to the rights of another (such as the partnership Southside here) which is entitled to raise the defense *(Merchants Exch. Natl. Bank v Commercial Warehouse Co.,* 49 NY 635; *Bennett v Bates,* 94 NY 354). Further, where a grantee takes a deed expressly subject to a usurious mortgage, that grantee cannot challenge the mortgage on that ground *(Del Rubio v Duchesne,* 284 App Div 89), but no such bar exists where the deed is taken subject to a general reference to unspecified liens and encumbrances *(Purdy v Coar,* 109 NY 448; *see also, Matter of Oakes,* 248 NY 280). The deed at bar is barren even of a general reference to encumbrances. Thus as a matter of well settled real estate law the usury defense would be available.

The IAS court found a triable issue, however, in the circumstance that the fifth and final offering plan, issued by Owners for the benefit of potential purchasers, contained the following pertinent provision. "8. The Corporation [Owners] shall satisfy the second mortgages held by Ellen Raacke which is recorded and Eta Herbst [the Lender] which are *[sic]* not recorded, *which will be satisfied by the payment of $150,000 in satisfaction of each mortgage."* (Emphasis added.)

The decisive point to note is that the italicized language, far from suggesting an acknowledgment that the usurious balance sought to be recovered here is due, completely negates that possibility by referring to the prospective $150,000 payment "in satisfaction of each mortgage." This unambiguous language leaves no room for any interpretation that any greater obligation with respect to this mortgage was assumed. (The fact that the outstanding option still remained extant does not enhance plaintiffs' position here; no one disputes that the option obligation was fully performed.) But even if the offering statement were not clearly against plaintiffs' claim, it is the language of the deed that conclusively controls. As stated in

*Bennett v Bates (supra,* at 366), "yet the deed, by which the contract was finally evidenced, is clear and unambiguous, and provides for the assumption by such grantee of the payment only of such sum as shall be actually due and owing thereon. In the absence of evidence of fraud or mistake in the execution of this deed, its terms must be deemed controlling upon the rights and liabilities of the parties so far as they are affected by the transfer of the mortgaged premises."

Thus, as a matter of law, the otherwise available usury defense was not impaired by any waiver.

(2) Estoppel in pais issue: Accepting as true, as we are bound to do, the allegation that attorney Reichman represented Lender (and the borrowing parties as well), no such estoppel can be asserted here. In *Payne v Burnham* (62 NY 69, 73), quoting an earlier case, estoppel in pais is defined as follows: " 'As a general rule, a party will be concluded from denying his own acts or admissions which were expressly designed to influence the contract of another, and did so influence it, and *when such denial will operate to the injury of the latter.'* " (Emphasis added.)

As the foregoing pleaded facts make abundantly clear, the Lender suffered no "injury" here, but, on the contrary, a windfall recovery. Indeed, once the equivalent of the money actually advanced has been repaid, such payment of principal works to dissolve any estoppel in pais. As the Court of Appeals explained in *Hammelburger v Foursome Inn Corp.* (54 NY2d 580, 587-588), "The basis for the latter rule is, of course, the doctrine of estoppel *in pais (Payne v Burnham, supra,* at p 73; *Ferguson v Hamilton,* 35 Barb 427, 437). It turns * * * upon the fact that the mortgagor would, if allowed to urge the defense, 'obtain an unconscientious advantage at the expense of an innocent person' * * * Estoppel does not render the mortgage valid but prevents 'one who has represented it to be valid from asserting that it is void, to the injury of those who have acted in reliance upon the representation' *(Claflin v Boorum,* 122 NY 385, 389; *Valentine v Lunt,* [115 NY 496, 504]). The policy of the usury statute is not, however, ignored, for *the innocent assignee is permitted to recover only the amount advanced with interest, rather than to enforce the mortgage for its face amount (Miller v Zeimer,* [111 NY 441,] 446; *Payne v Burnham, supra,* at p 74; *Bennis v Thomas,* 14 AD2d 895; *Klein v Meisels,* 254 App Div 603; see Osborne, Mortgages, § 111, p 273; Ann., 165 ALR 626, 717)." (Emphasis added.)

Since this claim is admittedly not for recovery of principal,

but for "excess interest," no estoppel precluding assertion of the usury defense can be brought into play. In the final analysis, the doctrine of estoppel in pais is an equitable one, and is subject to "the long-standing rule that it is a condition precedent to a plaintiff's obtaining equitable relief that the plaintiff himself do equity" *(423 S. Salina St. v City of Syracuse,* 68 NY2d 474, 483). There is nothing of equity to be found within the four corners of this action. While plaintiffs may have felt compelled to pursue it in vindication of their fiduciary responsibilities, it nonetheless savors only of "oppression and extortion" *(Payne v Burnham, supra,* at 74) and merits early extinction.

It is also clear that the present complaint is totally defective in failing to allege that Lender relied upon any representations of Reichman, or even what those representations might have been *(In re Grottola's Estate,* 124 NYS2d 85, 87).

The considerations additional to those discussed by Justice Glen mentioned in the majority memorandum do not support the viability of this action. The concept put forward is that because a simultaneous lender, Ellen Raacke, received a usurious payment, an entitlement to the same may be implied in favor of the personal representatives of Eta Herbst. On the contrary, where a debtor has a valid defense against two creditors, but fails to assert it against one, no disability thereby arises against its later assertion against the second. The reference in each of the two second mortgages to the other was simply designed to eliminate the possibility that one lien could become junior in priority to the other, whether by prior recordation or otherwise. The language used makes clear that only the status of the collateral was equalized, but no reference to the status of the holders of the collateral appears. Furthermore, any suggestion that this transaction created a joint venture (with a sharing of profits and losses) is wholly negated by the agreement of October 18, 1982, which has reference simply to a loan in a specified amount with the obligation to repay secured by a mortgage.

Accordingly, I would reverse the order denying defendant's motion to dismiss this action, grant the motion, and direct plaintiffs to surrender the bond and mortgage to defendant for cancellation.