OPINION OF THE COURT
Franklin R. Weissberg, J.
THE COMPLAINT
The six plaintiffs here consist of four smokers and the wives *426 of two of these smokers. The 14 defendants are comprised of six cigarette manufacturers, six corporate parents of the manufacturers, and two industry-related associations. The complaint alleges that each of the plaintiff smokers purchased and smoked cigarettes, became addicted to the product and have been afflicted with cancer as a result of their cigarette habit. The complaint contains a total of 10 causes of action. The first four allege that the smokers’ use of cigarettes and their resulting affliction with cancer are attributable to the defendants’ failure to warn them about the dangers of cigarettes prior to the enactment in 1969 of the Federal Cigarette Labeling and Advertising Act (15 USC § 1331 et seq.) (first cause of action); the defendants’ fraud, deceit and negligence in marketing cigarettes and making representations to the public about the safety of the product (second and third causes of action); and the defendants’ negligence in designing a defective product (fourth cause of action). An additional four causes of action allege that the defendants are liable to the plaintiffs under the theory of strict product liability for their marketing of a defective product which caused plaintiffs’ injuries (fifth cause of action) and for their breach of express and implied warranties (sixth, seventh and eighth causes of action). Finally, the ninth and tenth causes of action are brought by the two wives for loss of consortium. In making these allegations, the plaintiffs assert that the defendants are jointly and severally liable because they either conspired or acted in concert with one another in designing and marketing cigarettes.
The defendants have moved to dismiss the complaint pursuant to CPLR 3211 (a) (7) for failure to state a cause of action. Alternatively, they seek dismissal of various causes of action pursuant to CPLR 3016 (b) for failure to plead with particularity.
FAILURE TO IDENTIFY PARTICULAR CIGARETTE BRANDS AND ADVERTISEMENTS
A plaintiff must allege a claim with sufficient particularity so as to enable the defendant to prepare a response. (See, Foley v D'Agostino, 21 AD2d 60, 62 [1st Dept 1964].) Here, the individual manufacturers claim that they are unable to fashion an adequate response to the complaint since the plaintiffs do not identify which cigarette brand or brands each has smoked. The plaintiffs contend that they need not identify the particular brands which they may have smoked since, under their theories of conspiracy and concerted action, their case is based *427 on the conduct of the tobacco manufacturers as a whole in perpetrating a fraud on the public. However, the failure of a plaintiff or plaintiffs to identify in their pleadings the products they have used has been justified, under the concerted action theory, only where the plaintiffs are unable to do so because the product is not in an identifiable form when it is consumed. (See, Hymowitz v Eli Lilly & Co., 73 NY2d 487 [1989] [genetically marketed drug consumed by pregnant plaintiffs]; City of New York v Lead Indus. Assn., 190 AD2d 173 [1st Dept 1993] [plaintiffs unable to identify manufacturer of lead-based paint used in particular apartments].) Here, the plaintiff smokers should certainly be able to identify the cigarette brands which they have used, thus enabling the manufacturers to knowledgeably respond to the complaint. Accordingly, leave is granted to serve an amended complaint alleging what brand or brands of cigarettes that each of the plaintiffs has smoked. (See, Cresser v American Tobacco Co., 174 Misc 2d 1 [Sup Ct, Kings County 1997].)
The defendants also argue that, with respect to the plaintiffs’ allegations of fraud, misrepresentation and express warranty, the complaint is defective in its failure to identify the particular advertisements and representations on which they relied. Although plaintiffs should be able to identify the particular brands they smoked, it would be unreasonable to expect them to be able to identify any specific advertisement or other representation on which they relied. In Marcus v Jewish Natl. Fund (Keren Kayemeth Leisrael) (158 AD2d 101, 106 [1st Dept 1990]), the Court held that the plaintiff was not required to allege which fraudulent advertisement induced a specific contribution to a charity where the complaint alleged that the charity had engaged in a continuous and long-standing practice of false advertising. Here, too, the complaint alleges a continuous course of conduct on the part of the defendants. They are accused of having concealed and misrepresented over a period of decades relevant information from their advertisements in order to sell their product to the public. Under the circumstances, the facts stated in the complaint are set forth “ ‘in sufficient detail to inform the defendants of the substance of the claims’ ”. (See, Marcus v Jewish Natl. Fund [Keren Kayemeth Leisrael], 158 AD2d, at 106.)
CORPORATE DEFENDANTS
The protection afforded separate corporate entities can be overcome only by a showing that the parent has “exercised *428 complete domination of the corporation in respect to the transaction attacked; and * * * that such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff’s injury.” (Matter of Morris v New York State Dept, of Taxation & Fin., 82 NY2d 135, 141 [1993].) Here, the plaintiffs seek to hold the parent corporations liable for the actions of the manufacturers. In their pleadings, they allege only that these six defendant corporations have exercised “domination and control over the day-to-day operations and business” of the manufacturing defendants. It is well established that mere conclusory statements that an entity is an “alter ego” of a corporation or is “dominated or controlled” by the corporation is insufficient to sustain a cause of action. (See, Abelman v Shoratlantic Dev. Co., 153 AD2d 821, 823 [2d Dept 1989]; Bonanni v Straight Arrow Pubis., 133 AD2d 585, 587 [1st Dept 1987].) The pleadings are therefore deficient to the extent that they allege liability on the part of the corporate defendants. Leave is granted to amend the complaint so as to allege sufficient facts showing that the parent corporations exercised domination over the manufacturing defendants.
INDUSTRY-RELATED ASSOCIATIONS
The complaint alleges that the defendant Council for Tobacco Research-USA (the Council) conducted research, tested cigarettes and created advertisements on behalf of the defendant manufacturers. The complaint alleges that the defendant Tobacco Institute (the Institute) publicized, distributed and advertised information on behalf of the defendant manufacturers. The complaint does not allege that the Council or the Institute manufactured or sold cigarettes. Accordingly, they cannot be held liable by reason of negligent design, strict liability or express or implied warranty. (See, Rose v American Tobacco Co., Sup Ct, NY County, Oct. 15, 1997, Lebedeff, J.) The fourth, fifth, sixth, seventh and eighth causes of action are therefore dismissed to the extent that they relate to either the Council or the Institute.
PREEMPTION BY THE FEDERAL CIGARETTE LABELING AND ADVERTISING ACT OF 1969
In their motion to dismiss, the defendants argue that the claims asserted by plaintiffs John Carlo DaSilva and Yvonne Johnson based on failure to warn, fraudulent concealment and implied warranty are preempted by the Federal Cigarette Labeling and Advertising Act (the Labeling Act). According to *429 the complaint, Mr. DaSilva did not begin smoking until 1986 and Ms. Johnson did not begin until 1984. Unlike plaintiffs Robert Rusnak and Louis Ralph Verdile, who began smoking in 1955 and 1944, respectively, Mr. DaSilva and Ms. Johnson do not fall within the scope of the first cause of action since it only concerns the defendants’ alleged failure to warn prior to the enactment of the Labeling Act in 1969. Mr. DaSilva and Ms. Johnson must therefore base their claims on the conduct of the defendants occurring after the enactment of the statute.
The Labeling Act was intended to establish a comprehensive Federal program for informing the public of the health hazards of cigarettes. It requires specific warnings on advertising and on every cigarette package sold in the United States. Section 5 of the Labeling Act, as amended, is captioned “Preemption” (15 USC § 1334). It provides that:
“(a) Additional statements
“No statement relating to smoking and health, other than the statement required by section 1333 of this title, shall be required on any cigarette package.
“(b) State regulations
“No requirement or prohibition based on smoking and health shall be imposed under State law with respect to the advertising or promotion of any cigarettes the packages of which are labeled in conformity with the provisions of this chapter.” (15 USC § 1334.)
In Cipollone v Liggett Group (505 US 504 [1992]), the Supreme Court addressed the scope of this preemption provision. The Court found that the Labeling Act preempts any claim by a plaintiff which alleges that a cigarette advertisement or promotion improperly failed to include information other than the specific warning required by the Act. (Cippolone v Liggett Group, 505 US, at 524.) The Court also found that the Act preempts any claim that advertising and promotional materials which tend to minimize the health hazards of smoking, such as advertisements which associate cigarette smoking with glamour, romance and youth, are fraudulent. (Supra, at 527.) On the other hand, the Court emphasized that claims based on an affirmative misrepresentation of a material fact in an advertisement are not preempted. (Supra, at 529; see also, Hoskins v R.J. Reynolds Tobacco Co., NYLJ, Oct. 31, 1997, at 31, col 2 [Sup Ct, NY County, Ramos, J.].) Finally, the Court held that neither a claim for the breach of an express warranty nor a claim based on defective design is preempted by the Labeling Act. (Cippolone v Liggett Group, supra, at 524-526.)
*430 Applying the Supreme Court’s decision to the complaint herein, the defendants’ motion to dismiss the plaintiffs’ claims based on a failure to warn, fraudulent concealment and implied warranty after the effective date of the Labeling Act in 1969 is granted. These claims are preempted. In addition, the first cause of action alleging failure to warn prior to 1969 must be dismissed as to plaintiffs DaSilva and Johnson since they did not begin smoking until after 1980.
NEGLIGENT MISREPRESENTATION
In the third cause of action, the plaintiffs allege that the defendants, in advertisements and other material, have negligently misrepresented material facts about the addictive quality and safety of cigarettes. In moving to dismiss this cause of action, the defendants argue that a claim for negligent misrepresentation must allege that a relationship of privity exists between the parties and that the plaintiffs have not and cannot make such an allegation. In support of this argument, the defendants cite a recent decision of the First Department which dismissed a claim of negligent misrepresentation against General Motors (GM) on the ground that mass communication in the form of GM advertisements cannot establish contractual privity with unidentified members of the public who suffer economic injury by reason of their reliance on those advertisements. (See, McGill v General Motors Corp., 231 AD2d 449 [1st Dept 1996].)
Unlike McGill (supra), the present case does not involve commercial litigation. It sounds in tort and is thus more akin to a personal injury action than to an action alleging economic injury. In Heard v City of New York (82 NY2d 66 [1993]), the Court of Appeals specifically addressed the criteria for establishing a negligent misrepresentation claim in a personal injury action. For there to be an actionable claim, the defendant “must be under a duty to the plaintiff to exercise reasonable care in giving the information, and plaintiff’s reliance upon the information must be foreseeable”. (Supra, at 74.) The Court went on to hold “There can be no doubt that a prima facie case is made out when one familiar with a hazard offers direct assurances of safety to one who is unfamiliar with the hazard and who foreseeably relies upon those assurances.” (Supra.) Assuming the truth of the plaintiffs’ allegations, the defendants’ negligent misrepresentations to the public about the safety of cigarettes were intended to induce the purchase and use of the product. The defendants surely knew that if *431 they were incorrect, the health and safety of those consumers who smoked cigarettes based on these representations would be endangered. The defendants’ motion to dismiss the third cause of action because of lack of privity is therefore denied. If, in fact, the defendants negligently misrepresented the safety of cigarettes, such conduct is actionable since “ ‘in morals and good conscience the [plaintiffs had] the right to rely upon the [defendants] for information, and the [defendants] owe[d] a duty to give it with care’ ”. (Heard v City of New York, 82 NY2d, at 74, quoting International Prods. Co. v Erie R. R. Co., 244 NY 331, 338 [1927].)
CONSPIRACY AND CONCERTED ACTION LIABILITY
The complaint alleges that the defendants conspired, acted in concert and aided and abetted each other in their marketing and design of cigarettes. The defendants have moved to dismiss these allegations as they relate to the various causes of action. Citing Rastelli v Goodyear Tire & Rubber Co. (79 NY2d 289, 295 [1992]), they claim that the complaint only alleges facts which indicate mere parallel activity among competitors and that such allegations are insufficient to establish a cause of action for conspiracy or concerted action. The defendants assert that the plaintiffs’ allegations are merely conclusory and contain no facts which suggest that the defendants actually entered into an agreement to act in conspiracy or concert with one another.
The complaint alleges more than mere parallel activity among the defendants. According to the complaint, the defendant manufacturers joined together to create both the Council and the Institute for the purpose of providing and disseminating a pretextual scientific basis for their claims that cigarettes are not deleterious to a smoker’s health and safety. The complaint contains sufficiently detailed allegations that the manufacturers, the Council and the Institute agreed to take actions which resulted in one or more of the defendants committing a tortious act in furtherance of the agreement.
Nevertheless, since an agreement to commit a tortious act is intentional, the defendants can neither conspire to commit negligence nor act in concert to commit negligence. (See, Cresser v American Tobacco Co., 174 Misc 2d, supra, at 6-7.) Accordingly, the complaint’s allegations to this effect are dismissed insofar as they relate to any of the causes of action sounding in negligence.
The plaintiffs shall serve amended pleadings by January 26, 1998. The parties are directed to appear before the court on *432 February 9, 1998 at 2:30 p.m. for a preliminary conference to fix a discovery schedule.