OPINION OF THE COURT
Herbert Kramer, J.
In 10 virtually identical complaints, plaintiffs or the representatives of their estates claimed that the major cigarette manufacturers, a number of their corporate parents and two industry-related research associations acted negligently and intentionally in that they: failed to warn of the dangers of cigarette smoking prior to 1969; committed fraud and deceit; made negligent misrepresentations; designed the product in a negligent and defective manner; manufactured a product that was inherently dangerous and unsafe; and breached express and implied warranties of merchantability and fitness for a particular purpose.
Defendants move to dismiss the amended complaints arguing that (1) the plaintiffs have failed to identify which manufacturer’s product was consumed by the plaintiffs and thus have failed to causally link each defendant to the asserted injuries, that (2) the plaintiffs have failed to plead a factually sufficient legal nexus between the parent corporations, the industry-related research organizations and the manufacturers to render them liable for torts allegedly committed by the manufacturers and (3) that the fraud and misrepresentation counts were not pleaded with requisite specificity and (4) that plaintiffs have not pleaded the necessary elements of conspiratorial, concerted action or aiding and abetting liability.
THE THEORY OF INDIVIDUAL LIABILITY
The Manufacturing Defendants
Defendants moved to dismiss these amended complaints as deficient arguing that the plaintiffs did not "satisfy their obliga *4 tion to plead facts demonstrating how each one of the [manufacturing] defendants themselves caused injury to plaintiffs.” Plaintiffs acknowledge that they did not specify the brand or brands of cigarettes that were smoked or ingested, but argue that such failure is not fatal to the complaint. Plaintiffs assert that every cigarette regardless of its manufacture contained tar and nicotine and thus they do not have to specify a regular brand because apportionment of liability devolves to the jury. This court disagrees.
A plaintiff is required to lay out his claim with sufficient precision to enable his adversary to prepare a response and the court to control the case. (CPLR 3013; Foley v D’Agostino, 21 AD2d 60, 62 [1st Dept 1964].) To the extent that plaintiffs seek to hold each defendant individually liable, the complaints fail in both of these areas. First, it is impossible for the individual manufacturer defendant to frame a reasonable response to the complaint. (Aetna Cas. & Sur. Co. v Merchants Mut. Ins. Co., 84 AD2d 736 [1st Dept 1981].) Second, it might well take protracted discovery and extensive motion practice to ferret out those defendants who are not implicated in a given complaint. The burdens thus placed on the court and the defendants by these ambiguous pleadings are precisely those sought to be avoided by the drafters of CPLR 3013.
Accordingly, the amended complaints insofar as they purport to charge individual manufacturing defendants with perpetrating the enumerated torts cannot survive this motion to dismiss for failure to state a cause of action and would, were this the only theory of litigation advanced, need to be dismissed in their entirety.
With respect to the manufacturing defendants and the claims premised upon individual liability, leave is granted to serve a further amended complaint alleging what brand or brands of cigarettes the plaintiffs smoked.
The Corporate Parents and Research Organizations
Defendants argue that in order for the complainants to meet the legal threshold for imposing liability upon the corporate parents for the acts of the manufacturing subsidiaries, they must plead sufficient facts to demonstrate that the parent "exercised complete domination of the corporation in respect to the transaction attacked; and * * * that such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff’s injury”. (Matter of Morris v New York State Dept. of Taxation & Fin., 82 NY2d 135, 141 [1993].)
*5 Recasting the aforementioned criteria for piercing the corporate veil and framing them as allegations in the complaint[2] does not, without more, sustain a cause of action against the parents. (See, e.g., Abelman v Shoratlanctic Dev. Co., 153 AD2d 821, 823 [2d Dept 1989] [complaint that alleged the defendant corporate parent " 'dominated and controlled’ ” the subsidiary " 'in all of the conduct of (the subsidiary) referred to herein and for which (the subsidiary) acted as an alter ego’ ” was "couched in the most conclusory terms” and was insufficient to sustain the cause of action]; Cusumano v Iota Indus., 100 AD2d 892 [2d Dept 1984] [conclusory statements alleging that the defendant was the "alter ego” of the corporations with whom the defendant dealt were insufficient].)
This insistence upon specificity in pleadings that seek to pierce the corporate veil can be understood in light of our courts’ reluctance to disregard corporate form. (Gartner v Snyder, 607 F2d 582, 586 [2d Cir 1979]), and insistence upon a showing that "the owners, through their domination, abused the privilege of doing business in the corporate form to perpetrate a wrong or injustice against that party such that a court in equity will intervene”. (Matter of Morris v New York State Dept. of Taxation & Fin., supra, 82 NY2d, at 142.) The pleadings with regard to the corporate parents do not conform to these standards and consequently must be dismissed.
With respect to the research organizations, the amended complaints are similarly void of factual information supporting plaintiffs’ claims that the research organizations were *6 dominated and controlled by the defendant manufacturers and how that domination served to "perpetrate a wrong or injustice against [the plaintiff]”. (Matter of Morris v New York State Dept. of Taxation & Fin., supra, 82 NY2d, at 142.)
Accordingly, the claims against the corporate parents and the research organizations are dismissed with leave granted to plaintiffs to serve a further amended complaint against the corporate parents and research organizations upon an appropriate statement of factual allegations supporting the elements of liability here.
CONCERTED ACTION LIABILITY
In addition to asserting claims against each defendant individually, plaintiff alleges joint and several liability with respect to all of the defendants which is premised upon a concerted action theory.[3] A threshold issue raised by the parties is the question of whether a concerted action theory applies to causes of action sounding in negligence.
It is clear that with respect to civil conspiracy, which is not an independent tort (Alexander & Alexander v Fritzen, 68 NY2d 968, 969 [1986]) but is essentially an agreement to commit a tortious act, the underlying tort must be an intentional one since there can hardly be an agreement to commit a negligent act. (See, Lindsay v Lockwood, 163 Misc 2d 228 [Sup Ct, Monroe County 1994]; see also, Sonnenreich v Philip Morris, 929 F Supp 416, 419 [SD Fla 1996] ["(l)ogic and case law dictate that a conspiracy to commit negligence is a non sequitur”]; Rogers v Furlow, 699 F Supp 672, 675 [ND Ill 1988] [a conspiracy to commit negligence is a paradox at best]; Triplex Communications v Riley, 900 SW2d 716, 720, n 2 [Tex 1995] ["(g)iven the requirement of specific intent, parties cannot (agree to) engage in a civil conspiracy to be negligent”].)
A comparison of the elements of concerted action with the elements of civil conspiracy reveals that they differ only in *7 the fact that concerted action requires each of the parties to the unlawful agreement to have committed a tortious act while conspiracy requires only one of the participants of the agreement to have committed an Overt act in furtherance of the agreement.[4] Since an unlawful agreement is the gravamen of both concerted action and conspiracy, just as defendants cannot conspire to commit negligence they cannot act in concert to commit negligence. (Cf., Sackman v Liggett Group, 965 F Supp 391, 396 [ED NY 1997] [plaintiff "might still be able to maintain a claim based on concerted action”].)
THE INTENTIONAL TORTS
Of the eight substantive causes of action alleged in the complaints, only those alleging an intentional tort can support a claim for concerted action. Only two such intentional torts are asserted in these complaints: (1) the failure to warn prior to effective date of the Public Health Cigarette Smoking Act of 1969 (15 USC § 1331 et seq.) and (2) the cause of action for fraud and deceit.[5]
The Failure to Warn
A failure to warn can be either negligent or willful. (Compare, Bukowski v CooperVision Inc., 185 AD2d 31, 33 [3d Dept 1993] ["It is well settled that a plaintiff may recover in strict products liability or negligence for a manufacturer’s failure to warn of the risks and dangers associated with the use of its product”], with Seminara v Highland Lake Bible Conference, 112 AD2d 630, 632 [3d Dept 1985] [in the context of determination of a *8 landowner’s failure to warn Court held that tests of willful conduct apply to a determination of whether there has been a willful failure to warn].)
In the ordinary products liability case, the failure to warn follows a negligence formula: "The requisite elements of a cause of action in negligence are 1) a duty on the part of the defendant to conform to a certain standard of conduct with respect to the plaintiff, 2) a failure by the defendant to so conform, and 3) a reasonably close causal connection between the defendant’s conduct and some resulting injury to the plaintiff. This last element is commonly known as proximate cause. See generally, Prosser, law of torts, § 30 (4th ed. 1971).” (Cummins v Firestone Tire & Rubber Co., 344 Pa Super 9, 16-17, 495 A2d 963, 967 [1985].) Thus in the ordinary products liability case, ”[t]he manufacturer’s duty extends to warning consumers of latent dangers resulting from the foreseeable use of its product of which the manufacturer knew or should have known”. (Bukowski v CooperVision Inc., supra, 185 AD2d, at 33.)
An assessment of an actor’s conduct to determine whether it is willful rather than merely negligent involves a determination of whether the actor has committed "[i]ntentional acts of unreasonable character, performed in disregard of a known or obvious risk so great as to make it highly probable that harm will result [which] are considered willful conduct in the realm of tort law (Prosser and Keeton, Torts § 34, at 213 [5th ed 1984]).” (Seminara v Highland Lake Bible Conference, 112 AD2d 630, 633 [3d Dept 1985], supra.) Clearly, the pleadings in the case at bar meet these criteria in that they allege a willful failure to warn on the part of the defendants.[6]
*9 Fraud and Deceit
Fraud and deceit are certainly claims sounding an intentional tort. The defendants however argue that these claims, which must be pleaded with particularity, have not been adequately set forth. This court disagrees. "[T]he 'sole question presented for our review is whether the plaintiffs complaint states a cause of action. As such, we accept, as we must, each and every allegation forwarded by the plaintiff without expressing any opinion as to the plaintiffs ability ultimately to establish the truth of these averments before the trier of the facts. * * * If we find that the plaintiff is entitled to a recovery upon any reasonable view of the stated facts, our judicial inquiry is complete and we must declare the plaintiff’s complaint to be legally sufficient’ ”. (Marcus v Jewish Natl. Fund, 158 AD2d 101, 106 [1st Dept 1990].) Contrary to the defendants’ contention, the allegations of fraud and deceit are set forth " 'in sufficient detail to inform the defendants of the substance of the claims’ ”. (Supra.)
Moreover, given the fact that the case law in this area is developing rapidly, and reasonable minds could certainly differ with regard to the sufficiency argument, the better option is to permit plaintiffs to present the proof underlying the concerted action claims at trial where the trier of facts will be in a better position to consider them.
CONCLUSION
The Theory of Individual Liability
The defendants’ motions to dismiss the complaints in each of *10 these actions are granted insofar as they assert a theory of individual responsibility. Plaintiffs are granted leave to serve an amended complaint if they be so advised.
The Corporate Parents and Research Organizations
The defendants’ motions to dismiss each of the complaints insofar as they assert claims against the corporate parents and the research organizations are granted. Plaintiffs are granted leave to serve an amended complaint if they be so advised.
Concerted Action Liability
Defendants’ motions to dismiss the complaints insofar as they assert a theory of concerted action are granted only to the extent that the causes of action for negligent misrepresentation, negligent and defective design, strict products liability, breach of express warranty, breach of implied warranty and merchantability and breach of implied warranty for a particular purpose are dismissed.
Defendants’ motions to dismiss with respect to the first cause of action — failure to warn — and the second cause of action— fraud and deceit — are denied.[7]

. Paragraph numberings in this footnote correspond to paragraph numbers in the complaint lodged under index No. 28927/96 with respect to Aida Hellen. However, all the complaints contain the same allegations with respect to the statements recited below, albeit some in differently numbered paragraphs.
"38. Upon information and belief and at all times hereinafter mentioned, defendant [manufacturer] is a wholly owned subsidiary of defendant [corporate parent].
"39. Upon information and belief and at all times hereinafter mentioned, defendant [corporate parent] exercises domination and control over the day-to-day operations and business of defendant [manufacturer],
"40. Upon information and belief and at all times hereinafter mentioned, defendant [corporate parent] utilized its domination and control over the defendant [manufacturer] to commit the fraud, wrongful and unjust acts alleged herein.
"41. Upon information and belief and at all times hereinafter mentioned, the aforementioned fraud, wrongful and unjust acts caused and resulted in personal injuries to plaintiff said personal injuries more fully set forth hereafter.”

. The paragraph as numbered in this footnote corresponds to the paragraph in the complaint lodged under index No. 28927/96 with respect to Aida Hellen. However, all the complaints contain the same allegations with respect to the statements recited below, albeit some in differently number paragraphs. "151. Each defendant is liable for the conduct alleged pursuant to a concerted action theory which arises from the fact that one or more of the defendants, pursuant to a common plan or design, committed and/or aided and abetted in the commission of all or part of the conduct alleged herein by jointly conducting and collaborating on tests, studies, surveys, and experiments upon their cigarettes, together with other joint actions, all with an understanding, express or tacit, to participate in a common plan, scheme or design to commit the tortious acts set forth herein.”

. The elements of concerted action are (1) an understanding " 'express or tacit, to participate in "a common, plan or design to commit a tortious act” ’ ” and (2) that each defendant acted tortiously and (3) that one of the defendants committed an act which constitutes a tort in pursuance of the agreement. (Rastelli v Goodyear Tire & Rubber Co., 79 NY2d 289, 295 [1992].) The elements of conspiracy are: (1) an agreement to participate in an unlawful act; (2) an injury caused by an unlawful overt act performed by one of the parties to the agreement; (3) " 'which overt act was done pursuant to and in furtherance of the common scheme’ ”. (Lindsay v Lockwood, 163 Misc 2d 228, 234 [Sup Ct, Monroe County 1994], supra, citing Halberstam v Welch, 705 F2d 472, 477 DDC Cir 1983].)

. This court is aware that there is an argument that could be made that the tort of strict products liability might support a claim for concerted action or conspiracy. (See, Sackman v Liggett Group, supra.) However, we agree with the courts that have held that strict liability constitutes negligence per se which like negligence cannot support a claim for concerted action or conspiracy. (See, West v Caterpillar Tractor Co., 336 So 2d 80, 90 [Fla 1976]; Webb v Navistar Intl. Transp. Corp., 692 A2d 343, 351 [Vt 1996] [Morse, J., concurring].)

. Paragraph numberings in this footnote correspond to paragraph numbers in the complaint lodged under index No. 36009/96 with respect to Harry A. Cresser and Bernice L. Cresser. However, all the complaints contain the same allegations with respect to the statements recited below, albeit some in differently numbered paragraphs.
"153. Defendant manufacturers designed their cigarettes with the specific design specification that they be addictive.
"154. All defendants knew or should have known prior to 1969 that cigarettes were addictive.
"155. All defendants knew or should have known prior to 1969 that cigarettes could be harmful to the user’s health.
"156. All defendants knew or should have known prior to 1969 that cigarettes could cause cancer and other serious health risks to their users.
"157. Defendant manufacturers and tobacco manufacturers’ owners each had a duty to warn consumers of cigarettes that the smoking of *9 cigarettes would be addictive, could be harmful to health, and cause cancer or other serious illnesses.
"159. Defendant ctr, by conducting research and testing of cigarettes for an [sic] on behalf of defendant manufacturers, had a duty to warn consumers of cigarettes manufactured by its constituents, the defendant manufacturers, that the smoking of cigarettes would be addictive, could be harmful to health, and cause cancer or other serious illnesses.
"160. Defendant ti, by publicizing, disseminating, distributing and advertising information about cigarettes, for and on behalf of defendant manufacturers, had a duty to warn consumers of cigarettes manufactured by its constituents, the defendant manufacturers, that the smoking of cigarettes would be addictive, could be harmful to health, and cause cancer or other serious illnesses.
"175. Defendants’ individual and collective failure to warn and false and misleading advertising and/or promotions as set forth above were wanton, grossly negligent, reckless and demonstrated a complete disregard and reckless indifference to the safety and welfare of the general public and to this plaintiff particularly.”

. Although this court, in so holding, is rejecting defendants’ assertions that the unlawful agreement has not been pleaded with the requisite specificity, prudence might well dictate that plaintiffs recast these allegations so as to include additional factual information to flesh out these claims. This court is aware of the fact that plaintiffs have this information at their disposal because they offered it during oral argument of these motions.