Gilbert W. BENEWAY, Plaintiff,

v.

SUPERWINCH, INC., AW Direct, Inc., Kulkoni, Inc. and Superwinch, Ltd., Defendants.

Superwinch, Inc. Third–Party Plaintiff,

v.

Associated Delivery Services, Inc., Third–Party Defendant.

No. 00–CV–0337.

United States District Court, N.D. New York.

Aug. 21, 2002.

Law Firm of Scarzafava & Basdekis (John Scarzafava, Esq., of counsel), Oneonta, NY, for Plaintiff.

Friedman, Hirschen, Miller & Campito, P.C. (Peter J. Camp, Esq., of counsel), Schenectady, NY, for Defendant Superwinch, Inc.

Smith, Sovik, Kendrick & Sugnet, P.C. (Steven Ward Williams, Esq., of counsel), Syracuse, NY, for Defendant Kulkoni, Inc.

## MEMORANDUM–DECISION AND ORDER

HURD, District Judge.

## I. INTRODUCTION

On February 25, 2000, plaintiff Gilbert W. Beneway ("Beneway" or "plaintiff") commenced the instant diversity action against defendants Superwinch, Inc. and Superwinch, Ltd. (collectively, "Superwinch"), AW Direct, Inc.[1], and Kulkoni, Inc. ("Kulkoni"), pursuant to 28 U.S.C. § 1332. Beneway amended his complaint on July 11, 2000, October 30, 2000, and again on December 18, 2001, asserting causes of action for negligence, products liability, and breach of warranty. Superwinch filed a third-party complaint against Beneway's employer, Associated Delivery Service, Inc. ("ADS"), on September 29, 2000.

Defendants Superwinch and Kulkoni now move for summary judgment pursuant to Federal Rule of Civil Procedure 56. Plaintiff opposes. Oral argument was heard on May 10, 2002, in Utica, New York. Decision was reserved.

## II. FACTS

This action arises out of an accident that injured plaintiff on May 10, 1999, in Monticello, New York. The following are the facts stated in the light most favorable to the non-moving plaintiff.

On the morning of May 10, 1999, Beneway was engaged in the course of his employment as a mechanic and driver with ADS, which specializes in delivering and maintaining golf carts. Employees of ADS deliver golf carts using a tractor

trailer which ADS had equipped with a 600 lb. steel ramp. Once the trailer's rear doors are opened, the ramp is lowered, using a Superwinch Husky 10 winch (the "Husky 10"), manufactured and sold by defendant Superwinch. While delivering golf carts in Monticello, New York, plaintiff opened the rear doors of the trailer, which allowed the ramp to fall, severely injuring him and rendering him a paraplegic.

The Husky 10, as installed by the vice president of ADS, is located at the top rear inside edge of the trailer, near its doors. The design of the ramp includes a D-ring located at the center of the ramp near its end. The Husky 10 is supplied with a clevis pin slip hook manufactured by Kulkoni to Superwinch's specifications. The hook which Kulkoni manufactured for Superwinch has an open throat (the semicircular opening) unprotected by a safety latch. The blueprints which Superwinch provided to Kulkoni for the manufacture of the hook stated, "DO NOT USE FOR OVERHEAD LIFTING."

ADS employees deliver golf carts by lowering the ramp and unhooking the hook from the D-ring so that the carts may be backed down the ramp. The hook is then reattached and the ramp raised. The accident on May 10 was caused by slack that developed in the wire rope and allowed the hook to work free from the D-ring. The ramp remained upright, held in place by the trailer's rear doors, until Beneway opened the door and the unsupported ramp fell and injured him.

## III. STANDARD OF REVIEW

### A. Summary Judgment

Summary judgment must be granted when the pleadings, depositions, answers

---

[1]. On May 29, 2002, A.W. Direct was dismissed as a defendant in this action, pursuant to the stipulation of the parties.

to interrogatories, admissions and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Richardson v. New York State Dep't of Corr. Service*, 180 F.3d 426, 436 (2d Cir.1999). Facts, inferences therefrom, and ambiguities must be viewed in a light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Richardson*, 180 F.3d at 436; *Project Release v. Prevost*, 722 F.2d 960, 968 (2d Cir.1983). Once the moving party has met the initial burden of demonstrating the absence of a genuine issue of material fact, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Liberty Lobby, Inc.*, 477 U.S. at 250, 106 S.Ct. 2505; *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Matsushita Elec. Indus. Co.*, 475 U.S. at 587, 106 S.Ct. 1348. At that point the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586, 106 S.Ct. 1348. To withstand a summary judgment motion, sufficient evidence must exist upon which a reasonable jury could return a verdict for the nonmovant. *Liberty Lobby, Inc.*, 477 U.S. at 248, 106 S.Ct. 2505; *Matsushita Elec. Indus. Co.*, 475 U.S. at 587, 106 S.Ct. 1348.

## IV. DISCUSSION

The issues relevant to each defendant's liability are discussed in turn below.

### A. Kulkoni

Beneway asserts a cause of action against Kulkoni for failure to warn. He argues that it had a duty properly to warn the ultimate user of its hook of the dangers of using the hook in conjunction with overhead lifting. Kulkoni argues that it had no such duty because, as a component manufacturer, it is not liable for failure to warn of inherent dangers of the completed product. Defendant Kulkoni is correct.

The elements of a failure to warn claim under New York law are (1) a duty on the manufacturer's part; (2) to warn of dangers from foreseeable uses; (3) which failure proximately caused harm to the plaintiff. *See Colon ex rel. Molina v. BIC USA, Inc.*, 199 F.Supp.2d 53, 84 (S.D.N.Y. 2001); *Cresser v. American Tobacco Co.*, 174 Misc.2d 1, 662 N.Y.S.2d 374, 379 (N.Y.Sup.Ct.1997). Under New York law, "a component manufacturer cannot be held liable to an injured employee for the failure of the owner and assembler to post warning signs which the component manufacturer is in no position to know are necessary." *Munger v. Heider Mfg. Corp.*, 90 A.D.2d 645, 646, 456 N.Y.S.2d 271 (3d Dep't 1982). Absent proof that the component designs were defective or that the parts were wrongfully manufactured, or that the component part manufacturer was aware of some inherent danger in the design of the ultimate product, "no public policy can be served by imposing liability on a manufacturer of specialized parts of a highly technical machine, particularly when, as here, the parts were created in accordance with the design, plans and specifications of the owner and assembler of the unit." *Id.* at 645–46, 456 N.Y.S.2d 271.

In the instant case, the clevis hook was manufactured strictly in accordance with defendant Superwinch's specifications, and there is nothing inherently dangerous about a slip hook. Defendant Kulkoni did not take part in designing the Husky 10 and was not aware of how Superwinch planned to market the finished winches. Moreover, it was not foreseeable

to Kulkoni that its hooks would be used for overhead lifting, as the blueprint that Superwinch provided to Kulkoni, and upon which Kulkoni relied, expressly stated that the winch would not be used for overhead lifting. Accordingly, defendant Kulkoni had no duty to warn of dangers arising from the use of the hook at issue and plaintiff's claim against it must be dismissed.[2]

## B. *Superwinch*

In the complaint, Beneway asserts three causes of action against defendant Superwinch: (1) strict products liability; (2) negligence; and (3) breach of express and implied warranties. The issues relevant to each basis for liability are discussed below.

### 1. *Strict Products Liability*

█ Plaintiff's first cause of action against Superwinch is based in strict products liability. A plaintiff in a strict products liability action may assert that a product is defective due to any of the following: a manufacturing defect, a design defect, or the manufacturer's failure to provide warnings of the dangers inherent in the use of the product. *See, e.g., Voss v. Black & Decker Mfg. Co.,* 59 N.Y.2d 102, 106, 463 N.Y.S.2d 398, 450 N.E.2d 204 (1983). Beneway asserts that the Husky 10 was defective due to a design defect (the hook lacked a safety latch) and a failure to warn (the winch lacked adequate warnings of its limitations of use).[3] Superwinch argues that the Husky 10 was properly designed and safe for intended and foreseeable uses, and that there was no duty to warn because the danger was open and obvious.

█ To prevail in an action for strict products liability, a plaintiff must show that the product was "defective," and that

> the defect was a substantial factor in bringing about his injury or damages; provided: (1) that at the time of the occurrence the product is being used ... for the purpose and in the manner normally intended, (2) that if the person injured or damaged is himself the user of the product he would not by the exercise of reasonable care have both discovered the defect and perceived its danger, and (3) that by the exercise of reasonable care the person injured or damaged would not otherwise have averted his injury or damages.

*Id.* (quoting *Codling v. Paglia,* 32 N.Y.2d 330, 342, 345 N.Y.S.2d 461, 298 N.E.2d 622 (1973)). A product is defective when "if the design defect were known at the time of manufacture, a reasonable person would conclude that the utility of the product did not outweigh the risk inherent in marketing a product designed in that manner." *Id.* at 108, 463 N.Y.S.2d 398, 450 N.E.2d 204. Such design defect must exist at "the time the product leaves the manufacturer's hands." *Robinson v. Reed–Prentice Div. of Package Mach. Co.,* 49 N.Y.2d 471, 479, 426 N.Y.S.2d 717, 403 N.E.2d 440 (1980). The manufacturer of a defective product will be liable for injuries that result "when the product is used for its intended purpose or for an unintended but reasonably foreseeable purpose." *Lugo by Lopez v. LJN Toys, Ltd.,* 75 N.Y.2d 850, 852, 552 N.Y.S.2d 914, 552 N.E.2d 162 (1990).

█ The primary defect complained of in this case is that the Husky 10 was sold with a hook that lacked a safety latch.

---

**2.** In addition, Beneway asserts causes of action against Kulkoni for defective design and for breach of warranty. As plaintiff has failed to allege any possible basis on which these

claims might prevail, they must be dismissed also.

**3.** The failure to warn issue is discussed separately below.

Defendant Superwinch notes, without dispute, that safety-latched hooks were available as optional equipment. Under New York law, manufacturers are not liable when purchasers are injured using their product without optional safety equipment when

(i) a product that has a variety of uses is sold by a manufacturer intending for it to be employed in a use for which it is safe without available optional equipment, (ii) the product is equipped in compliance with the laws and accepted industry standards that are applicable to the features the absence· or inadequacy of which are alleged to have caused or aggravated the injury, (iii) the plaintiff uses the product in a manner that the manufacturer did not intend it to be used and in which the optional equipment is needed to make it safe, and (iv) the availability of the optional equipment is "brought home to the purchaser."

*Pahuta v. Massey–Ferguson, Inc.,* 170 F.3d 125, 133 (2d Cir.1999) (quoting *Biss v. Tenneco, Inc.,* 64 A.D.2d 204, 207, 409 N.Y.S.2d 874(4th Dep't 1978)). However, there are genuine issues of material fact regarding all four of the above elements.

There is a question as to whether it is reasonably foreseeable that a Husky 10 winch will be employed for raising and lowering objects, as it was by ADS in this case. (Baker Aff. ¶¶ 5, 22.) There is also a dispute as to whether the hook met ANSI warning standards, as well as whether the use of such a hook was consistent with industry practice. Further, there are questions as to whether defendant Superwinch adequately informed consumers that ADS's installation of the Husky 10 was one that required a safety-latched hook and whether the existence of such hooks was brought home to ADS. Viewing the disputed facts in the light most favorable to the non-moving plaintiff, the defendant Superwinch's motion for summary judgment on the strict products liability claim must be denied.

### 2. *Breach of Warranty*

Beneway's second cause of action against Superwinch is for breach of express and implied warranties. Where a manufacturer makes representations in an express warranty, to recover for breach of that warranty a plaintiff must prove that the product was being used for the purpose and in the manner intended. *See Codling,* 32 N.Y.2d at 342, 345 N.Y.S.2d 461, 298 N.E.2d 622. Regarding the implied warranties of merchantability and fitness for a particular purpose, the inquiry is similarly focused on consumer expectations when the product is "used in the customary, usual and reasonably foreseeable manners." *Denny v. Ford Motor Co.,* 87 N.Y.2d 248, 258–59, 639 N.Y.S.2d 250, 662 N.E.2d 730 (1995).

As noted above, there are genuine issues of material fact regarding whether the Husky 10 was being used in a foreseeable manner. As such, defendant Superwinch's motion for summary judgment on the breach of warranty claim must be denied.

### 3. *Negligence/Failure to warn*

Beneway's third cause of action against Superwinch is for negligence. To prevail in a cause of action for negligence, a plaintiff is required to establish: "(1) the existence of a duty on defendant's part as to plaintiff; (2) a breach of this duty; and (3) injury to the plaintiff as a result thereof." *Akins v. Glens Falls City Sch. Dist.,* 53 N.Y.2d 325, 333, 441 N.Y.S.2d 644, 424 N.E.2d 531 (1981). Plaintiff argues that Superwinch breached a duty of care owed to consumers by failing to use a safety-latched hook on the Husky 10 and by failing adequately to warn of its limitations. Superwinch oppos-

es, arguing that the winch was reasonably safe for all intended and foreseeable uses, and therefore Superwinch did not breach any duty of care owed to plaintiff.

Regarding Superwinch's failure to use a safety-latched hook, there is a question of fact as to whether such a hook was required to make a reasonably safe winch. Given that some of Superwinch's other winches have safety-latched hooks, and that a competing winch manufacturer offers a safety-latched hook on a winch similar to the Husky 10, a reasonable jury could conclude that the Husky 10 should have had a safety-latched hook as standard equipment. (Adams Aff. ¶ 46.) Accordingly, summary judgment is not appropriate on this claim.

Regarding Superwinch's alleged failure to warn that the Husky 10 should be limited to hauling, that is, uses where the load is always in contact with the ground, there is a question of fact as to whether lifting objects overhead was a reasonably foreseeable use of the winch. The hook blueprints that Superwinch provided to Kulkoni stated "DO NOT USE FOR OVERHEAD LIFTING." (Aff. of Claude Baker ¶ 43.) However, a question of fact remains as to whether that limitation, as well as the dangers inherent in overhead lifting, was adequately communicated to ADS as the ultimate user of the Husky 10.

Because there are genuine issues of material fact regarding whether Superwinch was negligent in using a open hook on the Husky 10 and in failing to warn of the winch's limitations, defendant Superwinch's motion for summary judgment on the negligence claim must also be denied.

## V. CONCLUSION

Plaintiff has failed to demonstrate an issue of fact as to the existence of any potential liability on the part of defendant Kulkoni. Accordingly, Kulkoni's motion for summary judgment must be granted.

However, issues of fact remain as to plaintiff's claims against defendant Superwinch for negligence, products liability, and breach of warranty.

Therefore, it is hereby

ORDERED that

1. Defendant Kulkoni, Inc.'s motion for summary judgment is GRANTED;

2. The complaint against the defendant Kulkoni, Inc., is DISMISSED; and

3. Defendants Superwinch, Inc. and Superwinch Ltd.'s motion for summary judgment is DENIED.